875 F.2d 1052
 100 A.L.R.Fed. 595, 57 USLW 2702,
11 Employee Benefits Ca 1185
 Henry F. PLUCINSKI
v.
I.A.M. NATIONAL PENSION FUND, Perth Amboy Dry Dock Co.,
Perth Amboy Management Pension Fund, William T.
Harth, Alfred C. Bruggeman, John Doe and
Richard Roe, Defendants, Third
Party Plaintiffs
v.
DISTRICT NO. 15, INTERNATIONAL ASSOCIATION OF MACHINISTS AND
AEROSPACE WORKERS, Third Party Defendant.
Appeal of I.A.M. NATIONAL PENSION FUND, Appellant.
Perth Amboy Dry Dock Co., Appellee.
 No. 88-5352.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 9, 1988.
Decided May 19, 1989.
 
 Robert T. Osgood (argued), I.A.M. Nat. Pension Fund, Washington, D.C., Eugene M. Haring, McCarter & English, Newark, N.J., for I.A.M. Nat. Pension Fund.
 Thomas P. Vitolo (argued), Yauch, Peterpaul, Clark & Vitolo, Springfield, N.J., for Perth Amboy Dry Dock Co.
 Before SLOVITER, BECKER, Circuit Judges, and FULLAM, Chief Judge, District Court.*
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This case arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Secs. 1001-1461 (1982). Appellant I.A.M. National Pension Fund ("IAM Fund" or "Fund") is an ERISA qualified multiemployer pension plan. See 29 U.S.C. Sec. 1002(2)(A). Appellee Perth Amboy Dry Dock Co. ("PADD"), an employer participating in the IAM Fund, alleges that it paid contributions to the Fund for the account of employee Henry F. Plucinski by mistake. The appeal requires us to decide whether employers such as PADD have either an implied right of action or a federal common law right of action under ERISA for equitable restitution of payments made to a pension fund under mistake of fact or law, as against the contention that ERISA's purpose of ensuring the stability of pension funds forecloses such actions.
 
 
 2
 Our sister circuits have split on both the implied right of action and federal common law issues. We conclude that there is no implied right under ERISA for such recovery, but that there is an action available under federal common law, which we are charged with applying interstitially in ERISA cases. See Van Orman v. American Insurance Co., 680 F.2d 301, 311 (3d Cir.1982). More precisely, we hold that an employer may recover such funds when the court finds it equitable, but we further hold that when restitution would result in the underfunding of a plan, it would be inequitable to order it. To the extent that the district court recognized a federal common law action for restitution, we affirm. However, because the district court did not address the equities of ordering restitution in this case, we remand for a development of the record and for the district court to exercise its equitable discretion.[1]
 
 I. Background
 
 3
 Plucinski was employed by PADD as a storekeeper commencing in October 1945. Beginning in 1966, PADD entered into a series of collective bargaining agreements that obligated it to make contributions to the IAM Fund on behalf of employees covered by the agreements. Members of the local union of the International Association of Machinists and Aerospace Workers ("IAM"), as well as painters, carpenters, and electricians, who were members of three other unions, were covered by the agreements. Plucinski, however, was not a member of the IAM or any other labor union. Furthermore, it is undisputed that the job classification "storekeeper" was not covered by the 1966 collective bargaining agreements or by any subsequent collective bargaining agreement between PADD and its employees.
 
 
 4
 The IAM Fund is a "defined benefit" fund, which means that eligible employees are paid a predetermined amount upon retirement. The Fund does not keep segregated accounts for individual employees; all of its assets are pooled to pay benefits for those who are eligible. The Fund was obligated to provide pensions for covered PADD employees at the time of their retirement from PADD.
 
 
 5
 In March 1972, in response to an inquiry as to whether PADD management could participate in the fund, PADD was advised in writing that the IAM Fund would not permit participation in the Fund by any more employees who were not members of the IAM. However, for reasons that are in dispute, in late 1972 or early 1973, PADD began to make contributions to the IAM Fund on behalf of Plucinski. PADD alleges that in 1971 it had become aware that Plucinski was one of several employees who was not a member of any pension plan, and that, to remedy this, PADD management reached an agreement with a union representative allowing Plucinski to participate in the IAM Fund. See Certification of Alfred C. Bruggeman at 2. The IAM Fund disputes that such an agreement had been reached and alleges that PADD made the contributions in order to defraud the IAM Fund into accepting Plucinski as a participant although he was not entitled to participate under the agreements. See Appellant's Br. at 10-11.
 
 
 6
 In October 1984, shortly before he reached age 65, Plucinski filed an application for pension benefits with the IAM Fund. The Fund denied the request for benefits on the ground that, as a storekeeper, Plucinski was not entitled to benefits under any collective bargaining agreement and that there was no other written agreement that would have made Plucinski eligible for benefits. On March 17, 1986, Plucinski brought suit in the district court for the District of New Jersey against PADD, the PADD Management Pension Fund, PADD's former President, Alfred C. Bruggeman, its Vice President, William T. Harth, and the IAM Fund, seeking to recover the value of the pension benefits that he had been promised. PADD, the Management Fund, and Messrs. Bruggeman and Harth cross-claimed against the IAM Fund and the IAM Fund cross-claimed against them.[2]
 
 
 7
 On cross-motions for summary judgment, the district court held that PADD was solely responsible for paying Plucinski's pension. The court also directed the IAM Fund to refund to PADD the value of all contributions paid by PADD to the Fund on behalf of Plucinski, plus interest. The court rejected an argument by the IAM Fund that ERISA does not provide a cause of action for an employer to recover erroneously paid contributions, finding that it was appropriate to create a federal common law right of action for such recovery. See Dist.Ct. Bench Op. at 6-7 (April 13, 1987) [hereinafter "Bench Op. II"]. In so doing, the district court adopted the holding and reasoning of Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund, 618 F.Supp. 943 (D.Del.1985), rev'd in part on other grounds, 850 F.2d 1028 (3d Cir.1988).
 
 
 8
 The district court directed the entry of final judgment against PADD and the IAM Fund pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, determining that there was no just reason for delay in entering a final judgment. Both PADD and the IAM Fund appealed. However, Plucinski subsequently settled his claims against PADD, the Management Fund, and Messrs. Bruggeman and Harth. PADD withdrew its appeal and the claims in the district court against the remaining defendants (the Management Fund, Bruggeman, and Harth) were dismissed by consent. Hence the only order subject to this appeal is the district court's order that IAM refund to PADD with interest the contributions made on behalf of Plucinski.
 
 
 9
 II. Do Employers Have a Cause of Action to Recover
 
 
 10
 Mistakenly Paid Pension Fund Contributions?
 
 
 11
 ERISA does not explicitly provide a right of action for employers to recover mistakenly paid contributions to multiemployer pension funds. The only reference in the statute to mistakenly paid funds is in section 403, which provides as follows:
 
 
 12
 (1) Except as provided in paragraph (2) ... of this section ... the assets of [an employee benefit] plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.
 
 
 13
 (2)(A) In the case of a contribution ... (ii) made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.
 
 
 14
 29 U.S.C. Sec. 1103(c) (emphasis added). Section 403(c)(2)(A)(ii) makes it possible for the trustees of a fund to refund mistaken contributions without facing a suit from beneficiaries for violating the non-inurement provision of section 403(c)(1). But section 403 neither requires such refunds to be made, nor provides employers a right of action against the fund if such refunds are not made.
 
 
 15
 PADD argues, and the district court found, that despite the lack of an explicit cause of action for such recovery, such a cause of action is available as a matter of federal common law. The IAM Fund contends that there is neither an implied right of action nor a federal common law cause of action for such recovery. Although PADD appears to concede that there is no implied right of action, because recognizing a cause of action under either theory would allow us to affirm the district court's judgment, we will address both issues. cf. Jurinko v. Edwin L. Weigand Co., 477 F.2d 1038, 1045 (3d Cir.1973) ("An appellate court may uphold a judgment on any theory which finds support in the record.").
 
 A. Implied Right of Action
 
 16
 Whether there is an implied right of action under a federal statute turns on four factors: (1) whether the plaintiff is in the class for whose especial benefit the statute was enacted; (2) whether there is any indication that Congress intended to imply a remedy; (3) whether a remedy is consistent with the purposes underlying the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. See Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). The question, however, is one of statutory construction, and the key to the inquiry is the intent of the legislature. See Northwest Airlines, Inc. v. Transport Workers Union of America, 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981).
 
 
 17
 As we have noted above, the circuits are divided on this issue. The Ninth Circuit has held that employers have an implied right of action against pension funds for the recovery of mistaken contributions. See Award Service Inc. v. Northern California Retail Clerks Unions, 763 F.2d 1066, 1068 (9th Cir.1985), cert. denied, 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986).[3] The Sixth and Eleventh Circuits have held that there is no such implied right of action. See Whitworth Brothers Storage Co. v. Central States, 794 F.2d 221, 233 (6th Cir.1986); Dime Coal Co. v. Combs, 796 F.2d 394 (11th Cir.1986); see also Crown Cork & Seal Co. v. Teamsters Pension Fund, 549 F.Supp. 307 (E.D.Pa.1982), aff'd mem., 720 F.2d 661 (3d Cir.1983).[4] We agree with the Sixth and Eleventh Circuits.
 
 
 18
 In Award Service, the Ninth Circuit held that the plaintiffs met the first Cort v. Ash factor, because section 403(c)(2)(A)(ii) of ERISA--the section that permits pension funds to return payments made under mistake of fact or law--was "clearly designed for the benefit of employers." 763 F.2d at 1068. It found that the second and third factors were met, reasoning that Congress must have intended to create a private right of action because otherwise the decision whether to refund the overpayments would be left wholly to the trustee of the fund, who would naturally favor keeping money in the fund. The court stated that "implying a private right of action furthers the congressional scheme of permitting restitution of contributions paid by mistake when equitable factors militate in favor of such restitution." Id. However, the court did not support its contention that Congress intended to create such an equitable scheme. The court found that the fourth factor was met because "no principle of federal-state comity renders a federal cause of action inappropriate." Id.
 
 
 19
 We disagree with the Ninth Circuit's approach because we find, as did the Eleventh Circuit, that " 'neither the statute nor the legislative history reveals a congressional intent to create a private right of action.' " Dime Coal, 796 F.2d at 399 (citations omitted). See also Whitworth, 794 F.2d at 233. As the district court for the Eastern District of Pennsylvania pointed out in Crown Cork & Seal, the language of Sec. 403(c)(2)(a)(ii) of ERISA is permissive, simply allowing pension funds to refund monies. Merely giving permission does not imply that Congress also wanted employers to be able to force the refund of contributions. See 549 F.Supp. at 311. Indeed there is no indication in the statute or in the legislative history that Congress intended to give employers any causes of action at all under ERISA. See 29 U.S.C. Sec. 1132 (giving participants, beneficiaries, fiduciaries, and the Secretary of Labor the right to sue in federal court under ERISA, but not mentioning employers). Because we find that the heart of the implied right of action inquiry--legislative intent--has not been established, we hold that there is no implied right of action under ERISA which would enable employers to compel the restitution of mistakenly paid pension fund contributions.
 
 B. Federal Common Law
 
 20
 Even though we find that there was no implied right of action for restitution of mistakenly paid contributions, we may still find that there is a federal common law cause of action for such recovery. As Chief Judge Schwartz has observed: "[T]he result of the Cort v. Ash analysis ... [is] not that Congress intended to forbid this cause of action, but only that there is insufficient evidence that Congress intended to provide a remedy." Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund, 618 F.Supp. 943, 951 (D.Del.1985), rev'd in part on other grounds, 850 F.2d 1028 (3d Cir.1988).
 
 
 21
 In certain areas, Congress has authorized the federal courts to create common law. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456-57, 77 S.Ct. 912, 917-18, 1 L.Ed.2d 972 (1957). ERISA is such an area. See Van Orman v. American Insurance Co., 680 F.2d 301, 311 (3d Cir.1982) ("Congress intended federal courts to fashion a federal common law concerning pension plans under ERISA."). Since Congress both authorized and expects that the courts will create a common law under ERISA, we need not look for a specific congressional intent to create the remedy at issue. Instead, the inquiry is whether the judicial creation of a right in this instance is " 'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.' " Id. at 312 (citation omitted).
 
 
 22
 This Court has observed that Congress has established through ERISA "an extensive regulatory network," and that "federal courts [should] not lightly create additional [ERISA] rights under the rubric of federal common law." Id. We have, however, previously recognized several federal common law actions pursuant to ERISA. See Carl Colteryahn Dairy, Inc. v. West Pennsylvania Teamsters & Employers Pension Fund, 847 F.2d 113, 122 (3d Cir.1988) (recognizing federal common law claim by employer alleging that fund had fraudulently assessed a large withdrawal penalty against it); Murphy v. Heppenstall Co., 635 F.2d 233, 237-39 (3d Cir.1980) (recognizing federal common law cause of action for employees to recover from their employer the difference between pension payments guaranteed by the Pension Benefit Guaranty Corporation and those promised in the pension agreement); Northeast Department of ILGWU v. Teamsters Local Union No. 229, 764 F.2d 147, 157-59 (3d Cir.1985) (recognizing federal common law cause of action for one fund to sue another for a declaratory judgment as to who is liable for certain medical expenses); but see Van Orman, 680 F.2d 301, 312 (no federal common law cause of action for employees to recover surplusage in on-going pension fund).
 
 
 23
 The Sixth and Eleventh Circuits have spoken to the question whether there should be a federal common law cause of action for employers to recover erroneously paid pension fund contributions. The Eleventh Circuit rejected this cause of action, reasoning that the comprehensive nature of the remedies within the ERISA statute made it appropriate to presume that the remedy was deliberately omitted. See Dime Coal, 796 F.2d at 399 n. 7. The Sixth Circuit found a federal common law cause of action, see Whitworth Brothers, 794 F.2d at 235-36, but its approach is not fully satisfying, because it created the action after merely establishing that it was appropriate to create common law in the area, without asking whether this particular cause of action furthered the purposes of ERISA. See id. at 233-36.[5]
 
 
 24
 In this case the IAM Fund argues that it would not be consonant with the purposes of ERISA to recognize such a cause of action. It directs our attention to the district court's opinion in Crown Cork, which concluded that recognizing an action for restitution would not accord with the major purpose of the ERISA scheme--to "protect the integrity of the pension funds for the benefit of employees and their beneficiaries." 549 F.Supp. at 311-12. As that court explained:
 
 
 25
 To impose a right to restitution in favor of employers could severely undermine the funds' integrity. Mistaken contributions, once invested, may be just as essential to the funds' integrity and stability as non-mistaken contributions. The statutory language itself recognizes this by allowing and not requiring a fiduciary to disgorge the funds. ERISA surely did not intend to impose the risk of mistaken contributions on the funds, particularly since the employer is in the best position to monitor the amount of its own contributions.
 
 
 26
 Id.
 
 
 27
 This reasoning has force. It inveighs strongly against PADD's position that employers should have an automatic right of restitution whenever error is established. However, it does not militate against the approach taken by most courts which have allowed a cause of action, since they have held that the action is one of equitable restitution and thus that the principles of equity apply. See, e.g., Award Services, 763 F.2d at 1069; Teamsters Local 639 v. Cassidy Trucking, Inc., 646 F.2d 865, 868 (4th Cir.1981); cf. Carl Colteryahn Dairy, 847 F.2d at 121-22 (recognizing equitable action by employer to avoid allegedly fraudulent assessment of liability for withdrawal from a multiemployer plan); Reuther v. Trustees of the Trucking Employees, 575 F.2d 1074, 1078 (3d Cir.1978) ("Because Congress has emphasized 'the equitable character' of [ERISA-qualifying] pension plans, we believe that equitable principles should be applied in this case."). These courts have not, however, ignored the Crown Cork principle, for they have recognized that "[a] principal equitable consideration is whether restitution would undermine the financial stability of the plan." Award Service, 763 F.2d at 1069; see also Peckham v. Board of Trustees of the International Brotherhood of Painters, 719 F.2d 1063, 1066 (individuals who contribute to pension fund have cause of action for return of erroneously made contributions unless fund will be underfunded if it makes restitution), modified on rehearing, 724 F.2d 100 (10th Cir.1983).
 
 
 28
 Similarly, we hold that there is an equitable cause of action by employers for the recovery of contributions erroneously paid to pension funds due to a mistake of fact or law. Of course, general equitable principles govern and when it would be inequitable to so order, for example, when restitution would result in the underfunding of the plan, the court should in its sound discretion deny recovery. We believe that creating such a cause of action will fill in the interstices of ERISA and further the purposes of ERISA. See Note, Implying a Statutory Right for Employers for the Return of Mistaken Overcontributions to a Multiemployer-Employee Benefit Plan, 62 Notre Dame L.Rev. 396, 408 (1987) (cause of action for employer restitution "furthers the policy of encouraging the growth and maintenance of multiemployer plans"). We do not believe that by enacting section 403 of ERISA, which simply permits funds to refund mistaken contributions, Congress intended to foreclose the courts from investing employers with a remedy. The existence of section 403 shows that Congress reached a consensus that pension funds should be allowed to return such contributions; but it does not demonstrate any consensus by Congress against judicial recognition of a common law action allowing employers to sue for equitable restitution.
 
 
 29
 Indeed, we believe that if we did not recognize this cause of action it could lead to severely inequitable results that we do not believe were intended by Congress. A simple keypunch error could cost an employer tens of thousands of dollars or more. Perhaps more strikingly, a trustee could extort extra money from an employer by force or fraud, and the employer would have no definite means of recouping the "contributions" from the fund. Even in the more run of the mill case it would be inequitable to allow the fund to keep money which came its way by honest mistake, for example if the employer miscalculated the amount it owed or if it erroneously believed that it was legally obligated to pay certain monies to the fund.
 
 
 30
 It must be remembered that it is optional for an employer to establish an ERISA qualifying pension plan. The ERISA statute provides tax benefits to employers who do so, in order to encourage broad participation. See ERISA: The Law and the Code, part 3 (A. Harris ed. 1987). If we put the burden of mistaken payments wholly on employers, we may discourage some employers from operating ERISA qualifying plans. It thus furthers the purposes of ERISA to recognize this cause of action.
 
 
 31
 The instant case was disposed of on summary judgment. There is no factual record as to how much money is in the fund or how great a burden restitution would be. Furthermore, there is a disputed question of material fact as to whether the contributions on behalf of Mr. Plucinski were made by mistake, or were an attempt by PADD to defraud the IAM fund into accepting Plucinski as a participant. The answer to that question will bear on the equities of ordering restitution. Therefore, although we agree with the district court's conclusion that there is an equitable right of action by employers for recovery of contributions in these general circumstances, the case must be remanded for the development of a fuller factual record and application of the standard we have announced.[6]
 
 III. Conclusion
 
 32
 For the foregoing reasons, we will vacate the judgment of the district court, and remand this case to the district court for proceedings consistent with this opinion, i.e. so that it may develop a fuller factual record and exercise its equitable discretion as to whether to order restitution.
 
 
 
 *
 Honorable John P. Fullam, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 We note that this Court has previously decided that there is federal jurisdiction over the federal common law cause of action that we recognize in this case. See Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund, 850 F.2d 1028, 1033-34 & n. 5 (3d Cir.1988). See infra n. 5. Consequently, we need not address the issue of jurisdiction at this juncture
 We do note, however, that the Seventh Circuit has recently held that the federal courts do not have jurisdiction over counterclaims by employers based on an asserted implied right of action under ERISA. See Giardono v. Jones, 867 F.2d 409 (7th Cir.1989). That Court reasoned that because section 502 of ERISA only gives the federal courts jurisdiction to hear civil actions under ERISA brought by participants, beneficiaries, fiduciaries, or by the Secretary of Labor, 29 U.S.C. Sec. 1132(a), federal courts do not have jurisdiction to hear actions implied under ERISA which are brought by employers. Id. at 412-13. Since we find that there is no implied right of action for a court to assert jurisdiction over, we do not need to consider this jurisdictional issue either.
 
 
 [2]
 All defendants except the IAM Fund joined in a third party complaint against the IAM local chapter. The district court dismissed this complaint and that dismissal has not been appealed
 
 
 [3]
 The Second and Fourth Circuits have allowed causes of action for the recovery of mistaken contributions, without explaining why such actions may be brought. See Dumac Forestry Service v. Int'l Bhd. of Elec. Workers, 814 F.2d 79, 82 (2d Cir.1987) ("A refund in contravention of the trustees' [decision not to return the overpayment] can[ ] be awarded [by a court if] supported by a determination that the [trustees'] refund policy is arbitrary and capricious."); Teamsters Local 639 v. Cassidy Trucking, Inc., 646 F.2d 865, 867-68 (4th Cir.1981) (allowing counterclaim by employer for return of mistakenly paid contributions in suit by fund alleging that employer was obligated to make additional contributions)
 
 
 [4]
 The affirmance by this Court of Crown Cork is of no precedential value because the affirmance was without opinion. See I.O.P. Ch. 5, Sec. A.2 (3d Cir.)
 
 
 [5]
 The district court for the District of Delaware has also recognized this federal common law cause of action. See Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund, 618 F.Supp. 943 (D.Del.1985), rev'd in part on other grounds, 850 F.2d 1028 (3d Cir.1988). Because the fund in Airco did not appeal this determination, this Court did not address it. See 850 F.2d at 1034
 
 
 [6]
 The IAM Fund also contends that it was improper for the district court to award interest on the refund payment. After the district court entered its order, this Court considered this issue. We held that an employer is not entitled to interest when recovering mistakenly paid pension fund contributions. See Airco, 850 F.2d at 1037. Thus, if on remand the district court does award equitable restitution to PADD, it should not award interest on the amount