**1146**

tion sharing issue as requested by the Class A plaintiffs.

PAINTERS OF PHILADELPHIA DIS-
TRICT COUNCIL NO. 21 WELFARE
FUND and Dalton, William; Johnson,
Harold; Clark, George; Doto, Gerard;
Tiedeken, Herbert; Schroeder, Richard;
Lewin, Herbert; as Trustees of Painters
of Philadelphia District Council No. 21
Welfare Fund, Appellants,

v.

PRICE WATERHOUSE.

No. 88–1928.

United States Court of Appeals,
Third Circuit.

Argued May 23, 1989.

Decided July 10, 1989.

Rehearing and Rehearing In Banc
Denied Aug. 15, 1989.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

### I.

This is an appeal from an order dismissing plaintiffs' complaint for failure to state a claim, 699 F.Supp. 1100. Plaintiffs–Appellants are Painters of Philadelphia District Council No. 21 Welfare Fund and William Dalton, Harold Johnson, George Clark, Gerard Doto, Herbert Tiedeken, Richard Schroeder, Herbert Lewin as trustees of that Fund. Defendant–Appellee is the accounting firm of Price Waterhouse, which performed several yearly audits for the Painters' Fund.

We are asked in this appeal to resolve three principal issues: (1) whether Price Waterhouse was a "fiduciary" of the Fund for the years in question (1978–1982) as that term is defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982), and consequently whether appellants have an express cause of action against Price Waterhouse under ERISA for breach of fiduciary duty, (2) if Price Waterhouse is not a fiduciary, whether appellants nevertheless have an implied cause of action against it for damages under ERISA, and (3) in the absence of such an implied cause of action, whether there is a corresponding federal common-law cause of action. We hold that Price Waterhouse is not a fiduciary under ERISA and, in view of *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) and *Plucinski v. I.A.M. National Pension Fund, et al.,* 875 F.2d 1052 (3d Cir.1989), that ERISA does not create an implied cause of action in favor of appellants against Price Waterhouse. We do not reach the question of whether appellants have a federal common-law cause of action because the issue was not raised in the district court.

John J. McAleese, Jr. and John H. Widman (argued), McAleese, McGoldrick & Susanin, P.C., King of Prussia, Pa., and Richard B. Sigmond, Spear, Wilderman, Sigmond, Borish & Endy, Philadelphia, Pa., for appellants.

John G. Harkins, Jr., Robert L. Hickok (argued), and Melinda P. Rudolph, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees.

Before BECKER, STAPLETON and ROSENN, Circuit Judges.

### II.

The Painters of Philadelphia District Council No. 21 Welfare Fund ("Fund") is

an employee welfare benefit plan as defined in ERISA. 29 U.S.C. § 1002(1). The Fund provides medical and disability benefits to the employees of various painting and decorating contractors who are parties to collective bargaining agreements with Painters of Philadelphia District Council No. 21.

From April 1, 1978 to July 11, 1986, the administrator of the Fund, Accu–Benefit Plans, Inc. and Rudolph Capri as CEO and controlling owner of Accu–Benefits (collectively hereinafter referred to as "Capri"), performed various functions for the Fund, including direction of office operations, investment of assets at the direction of the trustees, processing of claims for benefits, maintaining financial records, receiving of income, and payment of expenses. Appellants claim that during the course of its administration, Capri defrauded the fund of over $1 million. Capri's fraudulent practices allegedly included grossly overcharging the Fund for administrative services actually performed, collecting fees from the Fund for services not performed, and charging the Fund for expenses not actually incurred and for expenses incurred but not properly chargeable to the Fund.

From April 1978 until after April 1982, Price Waterhouse served as auditor to the Fund. As required by ERISA, 29 U.S.C. § 1023(a)(3)(A), Price Waterhouse performed annual audits of the Fund's books and records. The complaint contains four counts. Count I alleges that, as auditor of the Fund, Price Waterhouse owed the Fund and its participants a fiduciary duty under ERISA to conduct its audits in accordance with generally accepted auditing standards. In addition, the complaint alleges that these standards required Price Waterhouse to make discretionary determinations as to the reasonableness of the fees and expenses paid to Capri and to advise the trustees as to their propriety. Price Wa-

terhouse allegedly violated this fiduciary duty by failing to investigate and evaluate the propriety of the fees and expenses charged by Capri and by failing to notify the Fund, its trustees, and participants of the improprieties.

Count II alleges a breach of a general statutory duty of care implied from ERISA. Before us, appellants urge that this implied duty is a duty to audit in accordance with generally accepted auditing standards. Specifically, the complaint charges that Price Waterhouse conducted periodic audits of the Fund and possessed information concerning the fees charged by Capri, Price Waterhouse represented that it possessed expertise in the area of ERISA fund auditing and should have had knowledge of standard administrative fees charged for services similar to those provided by Capri, the trustees relied upon Price Waterhouse to report to them the improper fees charged the Fund by Capri, and Price Waterhouse was or should have been aware of Capri's breach of its fiduciary duties. Count III sets forth a state-law breach of contract claim and Count IV states a state-law negligence claim.

The district court dismissed the complaint, agreeing with Price Waterhouse that ERISA provides neither an express nor an implied cause of action in favor of a fund and its trustees against an accounting firm that has provided allegedly deficient auditing services.

### III.

ERISA provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 imposes personal liability on fiduciaries for breaches of their fiduciary duty.[1]

---

1. Section 1109 states:
   (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any

profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

Thus, if Price Waterhouse is a fiduciary for ERISA purposes, the district court erred.

ERISA defines "fiduciary" in § 1002(21)(A):

Except as otherwise provided in subparagraph (B) [addressing plan assets invested in securities issued by an investment company registered under 15 U.S.C.A. § 80a–1 *et seq.*], a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such a plan. Such term includes any person designated under section 1105(c)(1)(B)[[2]] of this title.

29 U.S.C. § 1002(21)(A).

Since Price Waterhouse clearly did not have authority or responsibility respecting management of the Fund or control over the disposition of its assets and did not provide investment advice for a fee, appellants concede that Price Waterhouse is not an ERISA fiduciary unless it comes within the scope of (iii) of section 1002(21)(A). Thus, the question presented is whether the performance of a standard audit [3] by an independent public accountant for a fund involves "discretionary authority or discretionary responsibility in the administration of ... a plan."

The role of a fund auditor is set forth in section 1023. That section provides that:

Except as provided in subparagraph (C), the administrator of an employee benefit plan shall engage, on behalf of all plan participants, an independent qualified public accountant, who shall conduct such an examination of any financial statements of the plan, and of other books and records of the plan, as the accountant may deem necessary to enable the accountant to form an opinion as to whether the financial statements and schedules required to be included in the annual report by subsection (b) of this section are presented fairly in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year. Such an examination shall be conducted in accordance with generally accepted auditing standards, and shall involve such tests of the books and records of the plan as are considered necessary by the independent qualified public accountant. The independent qualified public accountant shall also offer his opinion as to whether the separate schedules specified in subsection (b)(3) of this section and the summary material required under section 1024(b)(3) of this title present fairly, and in all material respects the information contained therein when considered in conjunction with the financial statements taken as a whole. The opinion by the independent qualified public accountant shall be made part of the annual report. . . .

29 U.S.C. § 1023(a)(3)(A).

We conclude that the authority and responsibility assumed by an independent public accountant performing section 1023 tasks do not constitute "discretionary authority or discretionary responsibility in the administration of ... a plan." A section (other than trustee responsibilities) under the plan." 29 U.S.C. § 1105(c)(1)(B).

---

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

*29 U.S.C. § 1109.*

**2.** Section 1105(c)(1) states that "[t]he instrument under which a plan is maintained may expressly provide for procedures ... (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities

**3.** Appellants do not allege in their complaint that Price Waterhouse undertook any special tasks or assumed any special responsibility for the Fund other than those that are customarily undertaken or assumed in the course of a section 1023 audit conducted by an independent qualified public accountant.

1023 auditor applies objective criteria to evaluate information provided to it by an organization managed and administered by others. In addition to lacking management authority and control with respect to the disposition of fund assets, an auditor has no authority to administer the day-to-day affairs of the Fund. Thus, for example, it lacks authority to sign checks, to pass upon the validity of claims against the Fund, or to implement plan policy with respect to investments, benefits, or personnel, etc. Indeed, its very function dictates that it be independent of those managing and administrating the plan. Since an auditor is without direct or indirect decision-making authority with respect to the affairs of the plan, it cannot be said that it exercises discretionary authority or responsibility in the administration of a plan.

Our conclusion is supported by the terms and structure of the statute, its legislative history, Interpretive Bulletins issued by the Department of Labor, and existing case law. Sections 1002(21)(A) and 1023 express Congress' intent in great detail, and ERISA's legislative history indicates that considerable care went into defining both the term "fiduciary" and the role of an auditor. In section 1023, Congress chose to describe an accountant qualified to perform an audit as "independent." We find this fundamentally at odds with any notion that such an accountant would be a plan fiduciary. To be considered a fiduciary, one must have discretion with respect to the administration of the plan; yet someone with discretion in the administration of a plan can hardly be said to be independent of it.

We also note that if section 1023 accountants were to be considered fiduciaries of a plan, they would presumably be able to sue under § 1132(a)(2) & (3) to, *inter alia*, enjoin any violation of that subchapter or of a term of the plan and indeed, as fiduciaries,

might well have a duty to bring such suits. ERISA provides that "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan ... (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(3). We do not believe that Congress intended to embroil section 1023 accountants in plan disputes in this manner. ERISA's legislative history also supports our interpretation of Congress' intent. Commenting on the definition of fiduciary, the Conference Committee stated:

> While the ordinary functions of consultants and advisors to [plans] may not be considered as fiduciary functions, it must be recognized that there will be situations where such consultants and advisors may because of their special expertise, in effect, be exercising discretionary authority or control with respect to the management or administration of [a plan] or some authority or control regarding its assets. In such cases, they are to be regarded as having assumed fiduciary obligations within the meaning of the applicable definition.

Joint Explanatory Statement of The Committee of Conference p. 323, *reprinted in 3 Legislative History of The Employee Retirement Security Act of 1974* at 4590. It seems clear to us from this passage that Congress intended accountants, attorneys, and other outside consultants to be treated as plan fiduciaries only if they go beyond their normal roles and assume management or administrative responsibilities.[4] Appellants do not claim that Price Waterhouse performed any function beyond the normal role of an auditor.

Our reading of the statute and its legislative history is consistent with that of the Department of Labor, the agency charged

---

4. Appellants quote from an early part of ERISA's legislative history, i.e., the report of the House Committee on Education and Labor on the final House bill, to the effect that "fiduciary" was intended to be a broadly defined term and that actuaries were intended to be considered fiduciaries. We do not find those passages help-

ful because: 1) the House report was superceded and, in effect, contradicted by the language of the statute and the Conference report; and 2) actuaries perform a substantially different role in an ERISA plan than do independent accountants.

by statute with the interpretation of ERISA.[5] We, of course, owe substantial deference to its views. *National Freight, Inc. v. Larson,* 760 F.2d 499, 505 (3d Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985). The Department has opined that "attorneys, accountants, actuaries, and consultants performing their usual professional functions will ordinarily not be considered fiduciaries...." Interpretive Bulletin 75–5, 29 C.F.R. § 2509.75–5 (1988). *See also* Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8 (1988) (persons who have no power to make any decision as to plan policy, interpretation, practices or procedures but who perform purely ministerial duties such as prepare reports required by governmental agencies are not fiduciaries).

Finally, we note that the case law provides direct and indirect support for our conclusion. In *Yeseta v. Baima,* 837 F.2d 380, 385 (9th Cir.1988), the Court of Appeals for the Ninth Circuit, relying in part on the above-quoted pronouncement of the Department of Labor, held that neither an accountant performing normal accounting functions nor an attorney providing "usual professional" services is an ERISA fiduciary. Reaffirming its earlier position, that court has since held that a plan attorney charged with the collection of employer contributions is not a fiduciary under ERISA. *Nieto v. Ecker,* 845 F.2d 868, 870–871 (9th Cir.1988). Also referencing the Department of Labor position, the Court of

Appeals for the Second Circuit held in *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1259 (2nd Cir.1987), that a fund attorney who participated in the negotiation of contracts with a plan administrator, but who was without authority to determine how much to pay the administrator, was not a fiduciary.

■ For these reasons, we hold that an independent public accounting firm that does no more than perform a section 1023 audit for an ERISA plan is not a fiduciary of the plan.[6]

## IV.

■ Turning to appellants' argument that it has an implied cause of action against Price Waterhouse under ERISA, we begin with the recent teachings of *Plucinski v. I.A.M. National Pension Fund, et al.,* 875 F.2d 1052, 1055 (3d Cir.1989):

Whether there is an implied right of action under a federal statute turns on four factors: (1) whether the plaintiff is in the class for whose especial benefit the statute was enacted; (2) whether there is any indication that Congress intended to imply a remedy; (3) whether a remedy is consistent with the purposes underlying the legislative scheme; and ■ whether the cause of action is one traditionally relegated to state law. *See Cort v. Ash,* 422 U.S. 66, 78 [95 S.Ct.

**5.** Section 1135 provides:

Subject to subchapter II of this chapter [addressing jurisdiction, administration, enforcement, and joint pension task forces] and section 1029 of this title [addressing criminal proceedings], the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter. Among other things, such regulations may define accounting, technical and trade terms used in such provisions; may prescribe forms; and may provide for the keeping of books and records and for the inspection of such books and records (subject to section 1134(a) and (b) of this title).

29 U.S.C. § 1135. *See also Russell,* 473 U.S. at 143 n. 11, 105 S.Ct. at 3091 n. 11 ("The Secretary's rulemaking power is contained in § 505, 88 Stat. 894, 29 U.S.C. § 1135.").

**6.** Appellants also argue that they have an express cause of action against Price Waterhouse

under 29 U.S.C. § 1132(a)(3). The short answer to this is that section 1132(a)(3) is limited by its terms to suits seeking *equitable* relief. *See Northeast Dept. ILGWU Welfare Fund v. Teamsters Local Un. No. 229,* 764 F.2d 147, 152–153 (3d Cir.1985) ("we believe that [a prior decision of this court] implicitly adopted the view that § 1132 must be read *narrowly and literally.*" (emphasis added)). Appellants, however, rely on Justice Brennan's concurrence in *Russell,* 473 U.S. at 157–158, 105 S.Ct. at 3098, for the proposition that section 1132(a)(3) incorporates the general law of trusts, which allows monetary damages as part of equitable relief. Since we have held that Price Waterhouse is not a fiduciary under ERISA, however, it cannot be held liable on a trust-law theory. Moreover, allowing appellants' suit under section 1132(a)(3) would render section 1109(a) superfluous, and would thus violate a fundamental principle of statutory construction. *Nieto,* 845 F.2d at 873.

2080, 2088, 45 L.Ed.2d 26] (1975). The question, however, is one of statutory construction, and the key to the inquiry is the intent of the legislature. *See Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 91 [101 S.Ct. 1571, 1580, 67 L.Ed.2d 750] (1981).

In *Plucinski,* the plaintiff-employer urged that it had an implied cause of action against the plan to recover contributions erroneously made it. Relying upon section 403(c)(2)(A)(ii) of ERISA, 29 U.S.C. § 1103(c)(2)(A)(ii), which authorizes the trustees of a plan to return erroneous contributions to the contributing employer, the plaintiff urged that all four *Cort v. Ash* factors were present. The district court found, however, that the employer could only recover its mistaken contribution through a federal common-law cause of action. This court agreed with the district court but remanded for determination of the equities involved in ordering restitution.

In its implied cause of action analysis under *Cort v. Ash,* this court declined to find an implied cause of action in favor of the employer. We reasoned:

> [T]he language of § 403(c)(2)(A)(ii) of ERISA is permissive, simply allowing pension funds to refund monies. Merely giving permission does not imply that Congress also wanted employers to be able to force the refund of contributions. *See* [*Crown Cork & Seal Co. v. Teamsters Pension Fund* ], 549 F.Supp. [307] at 311 [E.D.Pa.1982]. Indeed, there is no indication in the statute or in the legislative history that Congress intended to give employers any causes of action at all under ERISA. *See* 29 U.S.C. § 1132 (giving participants, beneficiaries, fiduciaries, and the Secretary of Labor the right to sue in federal court under ERISA, but not mentioning employers). Because we find that the heart of the implied right of action inquiry—legislative intent—has not been established, we hold that there is no implied right of action under ERISA which would enable employers to compel the restitution of mistakenly paid pension fund contributions.

At 1056.

The situation now before us is analogous to that in *Plucinski.* Appellants, relying on the language in section 1023 requiring an annual audit in accordance with generally accepted auditing standards, urge that the four *Cort v. Ash* factors are satisfied and that a private cause of action must be implied. As in *Plucinski,* we reach a contrary conclusion.

We acknowledge that ERISA was enacted for the benefit of the beneficiaries of employee benefit plans as represented by their trustees. Appellants' argument founders, however, when the other three *Cort v. Ash* factors are considered. First, the Court in *Massachusetts v. Russell* (holding that there was no implied cause of action for extra-contractual damages for wrongful delay in payment of benefits), makes it clear that the "six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." 473 U.S. at 146, 105 S.Ct. at 3092 (emphasis in original). In the face of this "enforcement scheme crafted with such evident care," *id.* at 147, 105 S.Ct. at 3093, the Court concluded that the *Cort v. Ash* "consistency with the legislative scheme" requirement precluded the finding of an implied right of action to recover extra-contractual damages under ERISA for wrongful delay in payment of benefits. Accordingly, although the implied cause of action advocated in this case can be said to be consistent with the statutory purpose of requiring an audit in accordance with specified standards, in light of *Russell,* we are constrained to conclude that that implied remedy is not consistent with ERISA's legislative scheme.

■ Moreover, state law has traditionally prescribed the standards of professional liability and, in the absence of clear indicia in the act or legislative history, we are reluctant to ascribe to Congress an inten-

tion to intrude in this area.[7] Far from there being clear indicia of an intent to create an implied professional malpractice cause of action under ERISA, there is not a scintilla of evidence that Congress had this in its mind and that fact is alone fatal to appellants' argument. Appellants are able to cite no text or legislative history to show that Congress affirmatively intended to create an ERISA cause of action for professional malpractice claims; they can only argue that "one must assume that Congress intended to provide a remedy for losses caused by an auditor's failure to abide by the auditing standards specified in 29 U.S.C. § 1023." Appellants' Brief at 25. In essence, this is the same argument advanced by the plaintiff and rejected in *Plucinski*. In the context of a "comprehensive and reticulated" statute like ERISA, such an assumption will not suffice.[8] *Russell*, 473 U.S. at 146, 105 S.Ct. at 3092.

■ We conclude that *Plucinski* and *Russell* dictate that appellants' second argument be rejected.[9]

**7.** We acknowledge appellants' argument that ERISA's broad preemption provision, 29 U.S.C. § 1144(a), preempts state professional malpractice claims as they relate to ERISA, but we are not persuaded by it.

In *Mackey v. Lanier Collections Agency & Service*, — U.S. —, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), (holding that a general Georgia garnishment statute as applied to welfare plans was not preempted by ERISA), the Court stated that:

ERISA plans may be sued in a second type of civil action, as well. These cases—lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace. Petitioners and the United States (appearing here as *amicus curiae*) concede that these suits, although obviously affecting and involving ERISA plans and their trustees, are not preempted by ERISA § 514(a).

108 S.Ct. at 2187 (footnote omitted).

We feel that professional malpractice actions brought by a plan are directly analogous to the situation in *Mackey*, and that, in the absence of an explicit corresponding provision in ERISA allowing a professional malpractice cause of action, Congress did not intend to preempt a whole panoply of state law in this area. Thus, we conclude that ERISA does not generally preempt state professional malpractice actions.

## V.

■ Before us, appellants cite our decision in *Northeast Department ILGWU Welfare Fund v. Teamsters Local Un. No. 229*, 764 F.2d 147, and urge us to find a federal common-law malpractice cause of action in favor of a plan against an accounting firm that fails to audit in accordance with generally accepted auditing standards. As appellants candidly acknowledged at oral argument, however, this argument was not urged before the district court. Accordingly, we decline to address it. *Singleton v. Wulff*, 428 U.S. 106, 120–121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.... Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where 'injustice might otherwise result.'" (quoting *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)) (citations omitted));

**8.** In *Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988), this court arrived at a similar conclusion. The court held that any creation of a top-heavy plan and any resulting failure to meet ERISA's qualifying requirements for favorable tax treatment did not mandate the existence of an implied cause of action to remedy such failure even if the failure amounted to an ERISA violation. Although the court concluded that the types of claims considered by it and by the Supreme Court in *Russell* were "different," it found the *Russell* decision "instructive" in arriving at its conclusion that the "comprehensive remedial structure of ERISA" also precluded the finding of an implied cause of action in *Scott Paper*. *Id.*

**9.** Appellants also argue that Price Waterhouse is liable under ERISA as a participant in Capri's breach of its fiduciary duty. We find this argument without merit. Appellants do not allege in their complaint that Price Waterhouse in any way either participated in or facilitated Capri's alleged breach of its duty. Appellants merely allege that Price Waterhouse knew or should have known of Capri's breach of its fiduciary duty and did not bring it to the attention of the trustees. We have been referred to no authority which would support the proposition that this, without more, would constitute culpable participation in a breach of trust under ERISA.

**1154**

*Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932 (3d Cir.1976) ("We generally refuse to consider issues that are raised for the first time on appeal."). We perceive no exceptional circumstances here which suggest an exception to the general rule.

## VI.

Because we conclude that the appellants failed to state a cause of action under ERISA, either express or implied, the judgment of the district court dismissing the appellants' complaint will be affirmed.