**BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, Plaintiff,**

v.

**ILLINOIS RANGE, INC., IRC Holding Corp., I Range, Inc., Edward Krakowiak, Edward Krysa and Donald Brokaw, Defendants.**

No. 98 C 8321.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 5, 1999.

David S. Allen, Jacobs, Burns, Orlove, Stanton & Hernandez, Chicago, IL, Terence Craig, Bruce Perlin, Glenda Gouldman, Sheet Metal Workers' National Pension Fund, Legal Department, Alexandria, VA, for plaintiff.

Robert J. Trizna, Thomas G. Draths, Jeffrey R. Rosenberg, Schuyler, Roche & Zwirner, Chicago, IL, for defendants.

### MEMORANDUM OPINION
### AND ORDER

DENLOW, United States Magistrate Judge.

This case is before this Court on a motion to dismiss Plaintiff's first amended complaint. The Board of Trustees of the Sheet Metal Workers' National Pension Fund ("Plaintiff" or "Fund") instituted this action against Illinois Range, Inc., IRC Holding Corp., I Range, Inc., Edward Krakowiak, Edward Krysa and Donald Brokaw (collectively "Defendants"), alleging violations of ERISA and supplemental state law claims. Count I is a claim for withdrawal liability directed against Illinois Range, Inc., IRC Holding Corp., and I Range, Inc. (collectively the "Corporate Defendants"). The Corporate Defendants have all been dissolved and have not entered an appearance. The remaining four counts were directed against Edward Krakowiak, Edward Krysa and Donald Brokaw (collectively the "Individ-

ual Defendants"). The Individual Defendants previously brought a motion to dismiss count II of the original complaint for failure to state a claim and to dismiss counts III and IV for lack of federal jurisdiction. This Court held that Plaintiff did state an ERISA claim against the Individual Defendants in count II and the Court did have supplemental jurisdiction over counts III and IV. *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Illinois Range, Inc.*, 186 F.R.D. 498 (N.D.Ill.1999). Plaintiff voluntarily withdrew its original count V, a claim for constructive trust.

Thereafter, Plaintiff filed a first amended complaint adding a new count V. Count V asserts a federal common law claim for restitution based upon unjust enrichment. The Individual Defendants now bring a motion to dismiss the first amended complaint. The only new issue relates to count V. Therefore, the Court adopts its prior opinion and denies the motion to dismiss counts II, III and IV. This opinion addresses count V.

The Court grants the motion to dismiss count V on the grounds that no federal common law claim exists because a similar statutory claim is available under ERISA. Alternatively, if this Court's previous holding is reversed on appeal[1] and Plaintiff is found to have no count II statutory claim under ERISA, federal common law does not permit Plaintiff to pursue count V for restitution based upon unjust enrichment.

## I. BACKGROUND FACTS

The following facts are taken from the first amended complaint and are treated as true only for purposes of this motion. Illinois Range was purchased by IRC Holding in November, 1986. The Individual Defendants owned IRC Holding. In March of 1994, IRC Holding was valued at over $1 million. In October of 1994, the Individual Defendants sold the stock of IRC Holding to a company called IRC Acquisition, which later changed its name to I Range. I Range was owned by Ken Krejaik, Robert Finnerty, Dick Antonson and Greg Germakian (collectively the "New Owners"). I Range executed a $2.5 million promissory note, secured by Illinois Range's assets and stock, in favor of the Individual Defendants. The agreement provided that Krakowiak would remain a director of the corporation until payment of the acquisition note. However, if Illinois Range was not profitable by at least $1 as of one year after the sale, the stock ownership would revert to the Individual Defendants. On April 1, 1996, the Individual Defendants and New Owners renegotiated the stock purchase agreement to provide for the Individual Defendants to receive only interest payments and not principal.

Plaintiff alleges that as of the time of the stock sale of IRC holdings in October 1994, the Individual Defendants knew or should have known that Illinois Range was not an economically viable entity. In 1993, Illinois Range alienated its major customer, McDonald's Corporation. In July 1994, Illinois Range sold its parts business to the Franks Group. In February 1994, McDonald's notified Illinois Range that it would not continue to use Illinois Range services. As of October 1994, withdrawal liability was not yet due and owing.

Following the stock sale and from late 1994 through early 1996, the Board of Directors of Illinois Range approved large dividends, totaling approximately $6.25 million, to its sole shareholder, IRC Holding, which approved large dividends to its sole shareholder, I Range, which in turn approved payments of $828,531 to the Individual Defendants in order to pay down the acquisition note financing the stock sale.[2] In April of 1996, the Individual

---

1. The parties and the Court have discussed the possibility of certifying for interlocutory appeal the question of whether the Individual Defendants can be subject to suit under ERISA or federal common law. The resolution of this motion makes the case ripe for interlocutory appeal.

2. Defendants take issue with the characterization that $828,531 ultimately passed to them in payments to pay down the note. They

Defendants declared the purchasers of Illinois Range in default under the stock purchase agreement. In September of 1996, Illinois Range assigned its assets for the benefit of creditors and ceased contributing to the Fund. The Fund determined that as of September 10, 1996 a complete withdrawal within the meaning of ERISA, 29 U.S.C. § 1381(b)(2), had been effected. This resulted in withdrawal liability in the amount of $2,273,699.86.

As a result of the dividend distributions from 1994 through 1996, Illinois Range was rendered insolvent and unable to pay its withdrawal liability. In December 1998, the Board of Trustees of the Sheet Metal Workers National Pension Fund filed the instant action against the Corporate Defendants and the Individual Defendants. Count I of the first amended complaint is a claim for withdrawal liability against the Corporate Defendants. Count II is a claim under ERISA against the Individual Defendants. Count III is a claim for illegal corporate distributions against the Individual Defendants. Count IV is a claim for fraudulent conveyance against the Individual Defendants. Count V is a claim for unjust enrichment under the federal common law of ERISA against the Individual Defendants.

## II. STANDARD OF REVIEW

In analyzing Plaintiff's complaint under Rule 12(b)(6), the court must accept as true the allegations in the complaint and all reasonable inferences that may be reasonably drawn from them. Fed.R.Civ.P.

12(b)(6); *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.* 179 F.3d 523 (7th Cir.1999). A motion to dismiss may be granted only if the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## III. COUNT V OF PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A FEDERAL COMMON LAW CLAIM.

Based upon this Court's previous holding, Plaintiff has stated an ERISA claim against the Individual Defendants under count II. Plaintiff may recover the dividends received by them if Plaintiff can prove that a principal purpose of the transaction was to evade or avoid withdrawal liability. *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Illinois Range, Inc.*, 186 F.R.D. 498 (N.D.Ill. 1999). Therefore, the Court grants the Individual Defendants' motion to dismiss count V on the grounds that no federal common law claim for unjust enrichment is needed. Because Plaintiff has a claim and a remedy under ERISA to recover the moneys paid to the Individual Defendants, there is no gap in ERISA that requires the creation of a federal common law claim.[3]

### A. Federal Common Law Claims Under ERISA

Courts are extremely reluctant to create ERISA causes of action by implication in

argue that because Plaintiff alleges that IRC only approved dividends to I Range totaling $353,576, no more than $353,576 of Illinois Range funds could have passed through IRC and I Range to the Individual Defendants. However, Plaintiff has alleged that I Range approved dividends to its shareholders of approximately $828,531. It remains to be seen during discovery or trial how much Plaintiff can prove passed through all of the entities to the Individual Defendants.

3. The Court notes the existence of 29 U.S.C. § 1451 which provides in pertinent part:
  A plan fiduciary, employer, plan participant, or beneficiary, who is adversely af-

fected by the act or omission of any party under this subtitle with respect to a multiemployer plan, ... may bring an action for appropriate legal or equitable relief, or both.
Consequently, the Court's jurisdiction to hear Count V is not at issue as such jurisdiction is granted by 29 U.S.C. § 1451. However, since 29 U.S.C. § 1451 does not define or create a claim itself, such section does not go to the issue of whether Plaintiff has stated a claim. As a result that issue remains in question. *See Carl Colteryahn Dairy, Inc., v. Western Pennsylvania Teamsters & Employers Pension Fund*, 847 F.2d 113, 120 (3d Cir.1988).

addition to those enumerated in the statute. *UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of America,* 998 F.2d 509, 512 (7th Cir.1993). This reluctance derives from the fact that ERISA embodies an interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a comprehensive statute. *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). Courts are reluctant to tamper with ERISA's enforcement scheme because it has been carefully crafted by Congress. *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 145, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985).

■ Under certain limited circumstances, it is appropriate for courts to develop a federal common law of ERISA. *UIU Severance Pay Trust Fund,* 998 F.2d at 512. In that ERISA preempts all state law relating to employee benefit plans, 29 U.S.C. § 1144, plaintiffs must rely upon federal common law for claims traditionally brought under state law. *Id.* "The legislative history demonstrates that Congress intended federal courts to develop federal common law in fashioning" additional appropriate rights under ERISA. *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 156, 105 S.Ct. 3085, 3097, 87 L.Ed.2d 96 (1985) (Brennan, J. concurring). As a result, courts develop federal common law to fill the gaps.

■ When creating additional ERISA rights under federal common law, the inquiry is whether the judicial creation of a right is "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1056 (3d Cir.1989). "[F]ederal courts should not lightly create additional ERISA rights under the rubric of federal common law." *Id.* After applying the first prong of the test determining whether the federal common law claim is necessary, courts then ask whether the particular cause of action furthers the purpose of ERISA. *Id.* at 1057.

Courts have supplemented ERISA with federal common law restitution claims in limited contexts. Courts have allowed federal common law restitution actions to permit employers to recover overpayments.

In the case of refunds for employer overpayment, ERISA can be supplemented with the federal common law action of restitution. A claim for restitution is appropriate in employer refund actions since the employer, in effect, is asking that the plan disgorge unfair gains. Relief under federal common law in the area of employer overpayment is consistent with the ERISA statutory scheme.

*Central States v. Howard Baer, Inc.,* 753 F.Supp. 241, 244 (N.D.Ill.1991). *See also, UIU Severance Pay Trust Fund,* 998 F.2d at 513 ("Absent a judicially-crafted cause of action, employers are left to the mercy of plan trustees who have no financial incentive to return mistaken payments."); *Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957, 967 (1st Cir.1989). ("recovery of contributions mistakenly made can be attempted under a common law theory of restitution."); *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund,* 847 F.2d 113, 122 (3d Cir.1988) (under the federal common law of pension plans, an employer may sue for the return of any withdrawal liability sums that were assessed as a result of a fraudulent inducement to join the fund.)

Similarly, courts have allowed ERISA fiduciaries to seek common law restitution against third parties who wrongly or mistakenly received money to which the fund was entitled. *See Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 494–95 (D.C.Cir. 1998) (Insurance company entitled to a federal common law unjust enrichment remedy to recover benefits erroneously paid to claimant); *Luby v. Teamsters Health, Welfare, & Pension Trust Funds,* 944 F.2d 1176, 1186 (3d Cir.1991) ("federal

common law restitution is available to employers to recover mistakenly paid pension fund contributions, unless restitution would result in underfunding of the ERISA plan."); *Blue Cross & Blue Shield of Ala. v. Weitz,* 913 F.2d 1544, 1548–49 (11th Cir.1990) (Plan may bring an equitable action to recover benefits erroneously paid pursuant to 28 U.S.C. § 1132(a)(3)); *Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 994 (4th Cir.1990) (Plan administrator may recover monies advanced to one of its participants on theory of federal common law unjust enrichment); *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1057 (3d Cir.1989) ("there is an equitable cause of action by employers for the recovery of contributions erroneously paid to pension funds due to a mistake of fact or law").

However, courts have allowed the federal common law claims to go forward only where there was no ERISA statutory claim to satisfy the same ends. *See, e.g., Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 987 (4th Cir.1990) ("§ 1132(a)(1)(B) does not provide a federal cause of action for plan administrators").

### B. There Is No Gap Which Requires Federal Common Law

■ In the present case, Plaintiff's count V federal common law claim overlaps Plaintiff's count II ERISA claim. Count V alleges that "[a]s a result of the illegal dividend distributions by Illinois Range to IRC Holding, which in turn transferred the funds through I Range to Defendants, Krakowiak, Krysa and Brokaw, Illinois Range was rendered insolvent and unable to pay its withdrawal liability to the Fund." (First Am.Compl. ¶ 89.) The count goes on to allege that the Defendants received an improper and inequitable benefit which harmed Plaintiff. (First Am.Compl. ¶ 91.) Plaintiff alleges that as a result of receiving this improper and inequitable benefit, Plaintiff has a claim of unjust enrichment and the assets wrongfully received by Defendants should be placed in a constructive trust for the benefit of the Fund. (First Am.Compl. ¶¶ 92–93.)

Count II alleges that "Defendants, the Prior Owners knew that if Illinois Range permanently ceased operations or otherwise failed to remain in business, it would effect a complete withdrawal from the Sheet Metal Workers' National Pension fund, which would result in withdrawal liability, pursuant to § 4201 of ERISA, 29 U.S.C. § 1381." (First Am.Compl. ¶ 46.) The count details the transfer of money from Illinois Range through other entities to the Prior Owners. (First Am.Compl. ¶¶ 49–64.) Plaintiff alleges that "[t]he transactions described above in paragraphs 49–64 were individually or in the aggregate entered into with the principal purpose to evade or avoid withdrawal liability." (First Am.Compl. ¶ 70.) Plaintiff urges that "the stock sale should be disregarded, pursuant to ERISA § 4212(c), 29 U.S.C. § 1392(c), and all amounts paid by the Illinois Range Controlled Group to the Prior Owners pursuant to the sale should, to the extent necessary to satisfy the withdrawal liability, be deemed assets of the Illinois Range Controlled Group." (First Am.Compl. ¶ 71.)

In essence, both counts claim the Individual Defendants wrongfully received assets transferred out of Illinois Range and seek to recover these assets to pay the withdrawal liability. Consequently, count V fails the first prong of the test because Plaintiff's federal common law unjust enrichment claim is not necessary to fill a gap in ERISA. *Plucinski,* 875 F.2d at 1056. Therefore, the motion to dismiss count V is granted.

## IV. ALTERNATIVELY, IF COUNT II FAILS TO STATE A CLAIM UNDER ERISA, PLAINTIFF HAS NOT STATED A CLAIM IN COUNT V FOR FEDERAL COMMON LAW RESTITUTION BASED UPON UNJUST ENRICHMENT

Because the issue of whether Plaintiff has a cause of action against the Individual

Defendants under either ERISA or federal common law will be certified for appeal to the Seventh Circuit, it serves the interests of the parties and the Court to make an alternative holding regarding count V. In this way, the issues raised by the pleadings can be dealt with collectively. In the event the Seventh Circuit concludes that count II fails to state a claim, the question raised is whether count V states a federal common law claim for restitution based upon unjust enrichment when no statutory ERISA claim provides relief. The Court answers this question in the negative because recognition of such an action is not consistent with ERISA's statutory scheme and because Plaintiff has not pleaded sufficient facts to allege unjust enrichment.

## A. Multiemployer Pension Plan Amendments Act

Before analyzing whether count V states a federal common law cause of action, a brief overview of the relevant statutory framework is necessary. In 1980, ERISA was amended with the enactment of the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381–1461. A multiemployer plan is a union-sponsored plan which covers more than one unaffiliated employer. Under the MPPAA, an employer who ceases to participate in a multiemployer plan may be held liable to the plan for its share of unfunded, accrued benefits. The employer's liability may attach whether its withdrawal is a "complete withdrawal", as described in 29 U.S.C. § 1383, or a "partial withdrawal", as described in 29 U.S.C. § 1385.

The MPPAA was enacted by Congress to cure problems arising when an employer ceases making payments to the pension plan fund. Prior to its enactment, when an employer ceases making payments, the plan is left with vested pension obligations which are only partially funded. *Robbins v. Lady Baltimore Foods, Inc.*, 868 F.2d 258, 261 (7th Cir.1989). Under the MPPAA, an employer who withdraws from a multiemployer pension plan is liable for its proportionate share of "unfunded vested benefits." 29 U.S.C. §§ 1381(a) and

(b)(1). This withdrawal liability ensures that "the financial burden of his employees' vested pension benefits will not be shifted to the other employers in the plan, and ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits." *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir.1992).

An employer can avoid withdrawal liability if it meets the statutory requirements of the "sale of assets" exemption to withdrawal liability. 29 U.S.C. § 1384. Under Section 1384, an employer's bona fide, arm's-length sale of assets to an unrelated party does not result in withdrawal liability if the following three conditions are met: 1) "the purchaser has an obligation to contribute to the plan," 29 U.S.C. § 1384(a)(1)(A); 2) the purchaser provides a five-year bond payable to the pension plan "if the purchaser withdraws from the plan, or fails to make a contribution to the plan when due," during the first five years after the sale, 29 U.S.C. § 1384(a)(1)(B); and 3) the contract for sale provides that the seller is secondarily liable for any withdrawal liability during the first five years after the sale, 29 U.S.C. § 1384(a)(1)(C). *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Cullum Companies, Inc.*, 973 F.2d 1333 (7th Cir.1992).

The MPPAA also provides for a resolution of withdrawal liability disputes through an informal process, 29 U.S.C. §§ 1382, 1399(b)(1) and (b)(2), and if still unresolved, by arbitration, 29 U.S.C. § 1401(a)(1), subject to judicial review. 29 U.S.C. § 1401(b)(2). Although a stock sale is not mentioned in the MPPAA, the Seventh Circuit has held that an employer can be held liable for withdrawal liability arising out of a stock sale of a subsidiary where a principal purpose of the transaction was to "evade or avoid withdrawal liability." 29 U.S.C. § 1392(c). *Santa Fe Pacific Corporation v. Central States, Southeast and Southwest Areas Pension Fund*, 22 F.3d 725 (7th Cir.1994). Howev-

er, a stock sale may be exempt under 29 U.S.C. § 1398 if there is no "interruption in employer contributions or obligations to contribute under the plan." *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund*, 787 F.2d 897 (3rd Cir.1986). Therefore, the MPPAA recognizes that a change in corporate form or ownership does not automatically trigger withdrawal liability.

## B. Restitution to Remedy Unjust Enrichment is an Independent Federal Common Law Cause of Action Under ERISA[4]

Count V alleges that the Individual Defendants received an improper and inequitable benefit and, consequently, harmed Plaintiff. (First Am.Compl. ¶ 91.) Plaintiff alleges that, as a result of receiving this improper and inequitable benefit, Plaintiff has a claim of unjust enrichment and the moneys received by the Individual Defendants should be placed in a constructive trust for the benefit of the Fund. (First

Am.Compl. ¶¶ 92–93.) The Individual Defendants contend that no common law claim for unjust enrichment should be created where the moneys received by the Individual Defendants were made pursuant to a contract and where there is no allegation that the Individual Defendants conspired with the New Owners or exercised control over the New Owners' decisions to pay the dividends.

The Seventh Circuit has cautiously approached the question of creating federal common law claims under ERISA. In *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir.1991), the Seventh Circuit affirmed the dismissal of two counts of a complaint in which a plan fiduciary and beneficiary sought to hold an actuary liable for mistakes and misrepresentations made while advising the fund. First, the court rejected the argument that an actuary was a "fiduciary" under ERISA. Second, the court refused to find an implied right of action or common law remedy against a

4. Defining the term restitution and explaining its relationship to unjust enrichment is a complex question which many scholars have addressed. Restitution can be viewed as both a remedy and an area of law. Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex.L.Rev. 1277, 1277 (1989). "The law of restitution offers substantive and remedial principles of broad scope and practical significance." *Id.* To date there is no one precise definition for restitution, however, it is commonly accepted that unjust enrichment is the basis of restitution claims. Dan B. Dobbs, *Law of Remedies* § 4.1(1) at 551 (2d ed.1993). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Restatement of Restitution* § 1 (1937). *See also*, Laycock, *supra*, at 1278 (stating that the rules of restitution "support a general principle that unjust enrichment must be disgorged"); Dobbs, *supra*, at 551–52 ("[R]estitution claims are bound by a major unifying thread. Their purpose is to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction"); *Restatement (Second) of Contracts* § 372 (stating that an injured party may seek as a remedy "through protection of his restitution interest, to prevent the unjust enrichment of the other party"). Consequently, when referring to claims, causes of action, or remedies, the courts use the terms restitution and unjust

enrichment interchangeably. *See Kwatcher v. Massachusetts Service Employees Pension Fund*, 879 F.2d 957, 967 (1st. Cir.1989) (stating "traditional equitable action for restitution"); *Plucinski v. I.A.M. National Pension Fund*, 875 F.2d 1052, 1057 (3d Cir.1989) ("Even though we find that there was no implied right of action for restitution of mistakenly paid contributions, we may still find that there is a federal common law cause of action for such recovery"); *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 494–95 (D.C.Cir.1998) ("This circuit has not previously decided whether there is a cause of action for restitution under ERISA."); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir.1990) ("equitable remedy of unjust enrichment"); *Printing Industry of Ill. Employee Benefit Trust v. Stout*, 157 F.R.D. 448, 451 (N.D.Ill.1994) ("equitable remedy of restitution"). Consequently, that makes this Court's task of distinguishing a cause of action from a remedy and determining which Plaintiff has pled more difficult. However, whether one calls the action restitution or unjust enrichment, the elements remain the same. The Seventh Circuit in *UIU Severance*, 998 F.2d at 512, discussed the cause of action of restitution. The facts and the court's language in the *UIU Severance* case demonstrate that the analysis revolved around a cause of action as opposed to a remedy. That analysis applies equally here.

non-fiduciary who provides erroneous information to ERISA regulators. Because ERISA contains a comprehensive civil enforcement scheme which provides for suits against plan administrators for failure to comply with reporting requirements (29 U.S.C. § 1132), but not against the professionals who assist in preparing the reports, the Seventh Circuit declined to expand the remedies to authorize suits against persons who fall beyond the statute's reach. Similarly, the Individual Defendants contend they are beyond ERISA's reach because withdrawal liability applies only to an "employer" who withdraws from a multiemployer plan, 29 U.S.C. § 1381, and they are not employers.

On the other hand, in *UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of America,* 998 F.2d 509, 512 (7th Cir.1993), the Seventh Circuit did recognize a federal common law cause of action. In *UIU,* an employer was seeking to recover from a pension fund to which contributions were mistakenly made. The court viewed the plaintiff's complaint as seeking to assert a claim for restitution. The court's treatment of that complaint demonstrates that it was a foregone conclusion to the court that this was an appropriate cause of action. "Based on this authority as well as the logic of the situation we believe that 'recovery of contributions mistakenly made can be attempted under a federal common-law theory of restitution.'" *UIU Severance Pay Trust Fund,* 998 F.2d at 512 (quoting *Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957, 967 (1st. Cir. 1989)).

The Court will engage in a two-part inquiry to determine whether a cause of action for unjust enrichment applies here. First, the Court must inquire whether this is an appropriate area of ERISA in which to extend the federal common law. Second, the Court will address whether count V sufficiently states a claim for restitution.

## C. A Claim for Restitution Against a Non–Employer For Withdrawal Liability Is Not Appropriate as a Matter of Federal Common Law

As stated earlier, when creating additional ERISA rights under federal common law, the inquiry is whether the judicial creation of a right in the instance at issue is necessary to fill in a gap or otherwise effectuate the statutory pattern. *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1056 (3d Cir.1989). The Court then asks whether the particular cause of action furthers the purpose of ERISA. *Id.* at 1057.

If this Court's prior holding is reversed on appeal, Plaintiff's statutory ERISA claims against the Individual Defendants do not survive. In other words, Plaintiff would have no means under ERISA of reclaiming the assets wrongfully obtained by the Individual Defendants. Without a federal common law claim for unjust enrichment, Plaintiff would be left without a remedy to recover these assets. Consequently, under these circumstances a gap in ERISA law would exist.

The next issue is whether the cause of action is consistent with ERISA's scheme. Congress has crafted a comprehensive civil enforcement scheme in ERISA. The policy choices reflected in the inclusion of certain remedies and the exclusion of others would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies that Congress rejected in ERISA. *Pilot Life Insurance Co., v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987). For example, the Supreme Court has refused to give rights to receive plan information to a non-participating non-beneficiary where ERISA granted those rights only to "any participant or beneficiary" under 29 U.S.C. § 1024(b)(4). *Firestone Tire and Rubber Company v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Supreme Court refused to expand the scope of protection or to create

additional liability where the statute was clear.

The Seventh Circuit has strictly construed the MPPAA. In *Central States, Southeast and Southwest Areas Pension Fund v. Bell Transit Company*, 22 F.3d 706 (7th Cir.1994), the court refused to impose withdrawal liability on a former employer who failed to post a bond under 29 U.S.C. § 1384. Because Congress had placed the bond requirement in a different section from the other requirements, Congress did not intend to impose withdrawal liability for a violation of the bond requirement. "We are bound by the particular rules enacted by Congress and are not free to carve out our own exceptions merely because we believe that they would best serve Congress' policies and goals." *Id.* at 710.

■ Similarly, in *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Cullum Companies, Inc.*, 973 F.2d 1333 (7th Cir.1992), the Seventh Circuit held that an employer was not responsible for withdrawal liability arising out of an asset sale where the purchaser ceased making contributions after twenty-two months. The court reasoned that the time for determining whether the requirement in section 1384(a)(1)(A) has been met is at the time of the sale, not afterwards. Because the purchaser agreed to contribute to the plan at the time of sale, the transaction met the exemption. The Seventh Circuit rejected the argument that the broad purposes of ERISA should be looked to at the expense of the specific statutory language. As a result, this Court concludes that the recognition of a common law claim for restitution is not consistent with the statutory scheme which imposes withdrawal liability upon employers.

5. This is true only if the Seventh Circuit concludes that count II fails to state a claim

## D. Plaintiff Has Not Sufficiently Stated a Restitution Claim

The Seventh Circuit has laid out the elements of a federal common law restitution claim in an ERISA-related action. Plaintiff must demonstrate that "(1) it had a reasonable expectation of payment (2) the [defendants]·should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment. C. Kaufman, *Corbin on Contracts* § 19A, at 50 (Supp. 1989)." *Harris Trust & Savings Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 615 (7th Cir.1995).

■ Count V does not set forth a claim for unjust enrichment. There is no allegation that the sale giving rise to the payments was unlawful.[5] There is no allegation that the moneys paid to the Individual Defendants were not due under the contract. There is no allegation that the Individual Defendants controlled I Range or directed that the payments be made to them. There is no allegation that the Individual Defendants conspired with the New Owners to defraud anyone. There is no allegation that the New Owners did not intend to continue payments to the fund. All the payments were made to the Individual Defendants prior to withdrawal liability having come due. Finally, it is not alleged that the Individual Defendants were employers under ERISA. Therefore, count V fails to state a federal common law cause of action for restitution under ERISA.

## V. CONCLUSION

The Court adopts its earlier opinion with respect to counts II, III and IV of Plaintiff's first amended complaint and relies upon this opinion with respect to count V. For all of the foregoing reasons, **the Court denies the motion to dismiss counts II, III and IV and grants the motion to**

under ERISA.

dismiss count V of Plaintiff's first amended complaint.