**EMPIRE KOSHER POULTRY, INC., Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS HEALTH AND WELFARE FUND OF NORTHEASTERN PENNSYLVANIA, Defendant.**

**Civil Action No. 1:03–CV–1078.**

United States District Court, M.D. Pennsylvania.

Sept. 26, 2003.

Charles T. Young, Jr., Jonathan H. Rudd, McNees Wallace & Nurick, Harrisburg, PA, for Plaintiff.

Richardson Todd Eagen, Robert Mariani, P.C., Scranton, PA, for Defendant.

## *MEMORANDUM*

CONNER, District Judge.

Presently before the court is a motion by defendant, United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania ("United Fund"), seeking to dismiss the claims of plaintiff, Empire Kosher Poultry, Inc. ("Empire"), for restitution of amounts mistakenly paid to defendant under a contract between Empire and its employees' union. (Doc. 5). Empire alleges that United Fund, a multiemployer plan established to provide health and welfare benefits to employees under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1401, was aware of plaintiff's error in making the payments and, yet, unjustly retained the additional amounts. (Doc. 1). Defendant argues that dismissal for lack of subject matter jurisdiction and for failure to state a claim is warranted because plaintiff's claim for restitution is not cognizable under federal common law and plaintiff failed to exhaust mandatory procedures for seeking a refund from United Fund prior to bringing suit. (Doc. 5).

The motion has been briefed by the parties and is now ripe for disposition. For the reasons that follow, the court will deny defendant's motion.

## I. *Factual Background* [1]

In 1988, Empire, an employer principally engaged in the processing and sale of

---

**1.** In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in plaintiff's complaint, without consideration of other exhibits submitted by the parties. *See infra* Part II.

kosher poultry products, entered into one of a series of three-year employment agreements between itself and the local chapter of its employees' union. (Doc. 1 ¶¶ 5–9). The contract included, *inter alia,* a provision obligating Empire to make periodic contributions to United Fund or its predecessor in interest to support medical and welfare benefits provided by United Fund for Empire's employees. Under the clause, these contributions were to be made for all eligible individuals "who ha[ve] been employed by [Empire] for at least ninety (90) days." (Doc. 1 ¶¶ 7–10).

In 1991, Empire and its employees' union entered into a new agreement, which retained many provisions from the 1988 contract, including the obligation for Empire to make contributions to United Fund for each individual employed over ninety days. (Doc. 1 ¶¶ 11–13). However, the new contract also included the following clause:

> Effective February 1, 1992, [Empire] will make contributions for an eligible employee who is a member of the bargaining unit who has been employed by [Empire] for at least one-hundred eighty days (180) days.

(Doc. 1 ¶ 11). According to Empire, this language, effective in February 1992, postponed its obligation to make contributions for individuals until they had been employed for 180 days. (Doc. 1 ¶¶ 12–13). Subsequent agreements preserved the two conflicting clauses, one mandating payments after ninety days of employment and another requiring such contributions only after 180 days had passed.[2] (Doc. 1 ¶¶ 14–27).

Despite this provision, Empire continued to make contributions for individuals after they had been employed for ninety days. (Doc. 1 ¶¶ 33–35). Empire alleges that United Fund knew of this mistake and yet retained the overpayments from 1992 until February 2003, when Empire discovered the error during the course of an internal investigation.[3] (Doc. 1 ¶¶ 36–41). Empire advised United Fund of the overpayment, allegedly over $800,000, but United Fund has not refunded any amount. (Doc. 1 ¶ 42).

In June 2003, plaintiff filed the complaint in the case *sub judice,* presenting a claim for equitable restitution under federal common law and asserting jurisdiction under 28 U.S.C. § 1331. (Doc. 1 ¶ 3). Plaintiff alleges that defendant acted in bad faith in retaining the overpayments and "requests that the Court enter judgment in its favor and against [United Fund] in an amount in excess of 838,930 [sic], together with costs, and/or all other appropriate equitable relief." (Doc. 1).

## II. *Standard of Review*

■ Federal Rule of Civil Procedure 12(b) enumerates several potential bases for dismissal of an action: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of process or service of process, failure to state a claim upon which relief may be granted, and failure to join an indispensable party. FED.R.CIV.P. 12(b). When a motion is premised on both lack of subject matter jurisdiction and another Rule 12(b) ground, mootness concerns dictate that the court address the issue of jurisdiction first.

---

**2.** In the 1997 and 2000 agreements, the parties eliminated language regarding the effective date of the provisions. (Doc. 1 ¶¶ 17, 27).

**3.** The investigation by Empire ensued after United Fund concluded, following an audit, that Empire owed approximately $86,000 in delinquent contributions. (Doc. 1 ¶¶ 36–40). No claim for this amount is presented in the current motion.

*Tolan v. United States,* 176 F.R.D. 507, 509 (E.D.Pa.1998).

■■■ Motions under subsection (b)(1), asserting lack of subject matter jurisdiction, take one of two forms. Parties may levy a "factual" attack, arguing that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside of the court's jurisdiction. *Id.; see also Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). In such circumstances, the court is both authorized and required to evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. *Id.; Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.,* 227 F.3d 62, 69 (3d Cir.2000).

■ In contrast, a "facial" attack assumes the veracity of the allegations in the complaint but argues that the pleadings fail to present an action within the court's jurisdiction. *Tolan,* 176 F.R.D. at 510. The court should grant such a motion only if it appears with certainty that assertion of jurisdiction would be improper. *Id.; Carpet Group,* 227 F.3d at 69. If the complaint is merely deficient as pleaded, the court should grant leave to amend before dismissal with prejudice. *See Shane v. Fauver,* 213 F.3d 113, 116–17 (3d Cir.2000).

■ Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim that fails to assert a basis upon which relief can be granted. FED.R.CIV.P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court is generally limited to the face of the complaint, and must accept as true all factual allegations and reasonable inferences therefrom. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir.1994). The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000). As in the context of a facial attack on jurisdiction, the court must grant leave to amend before dismissing a complaint that is merely deficient. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002); *Shane,* 213 F.3d at 116–17.

In the present case, defendants' motion presents a facial challenge to subject matter jurisdiction under subsection (b)(1) and an objection to the sufficiency of the complaint under subsection (b)(6). The court will consider the issue of jurisdiction first.

## III. *Discussion*

### A. *Federal Question Jurisdiction*

To determine the propriety of jurisdiction in this case, it is first necessary to determine the precise nature of defendant's objections. Defendant argues that the Supreme Court, in *Great–West Life and Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), eliminated a federal common law cause of action for the type of restitution claimed in plaintiff's complaint and, as such, plaintiff's action does not "arise[ ] under" a law of the United States for purposes of federal question jurisdiction under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Essentially, defendant contends that jurisdiction under § 1331 depends on the viability of the underlying federal claim.

The logical ends of this argument show its fallacy. The validity of a litigated cause of action is *always* contested, whether in the context of a motion to dismiss or arguments at trial. Assuming defendant's premise, any court that grants a motion to dismiss for failure to state a claim would automatically divest itself of jurisdiction over the action. Such a result would render Federal Rule of Civil Procedure 12(b)(6) a legal nullity, overwhelmed entirely by Rule 12(b)(1) in cases premised on federal question jurisdiction.

 The fundamental misapprehension of defendant's argument is a failure to appreciate that, while subject matter jurisdiction is a prerequisite to finding a valid cause of action, a valid cause of action is not a prerequisite to finding subject matter jurisdiction. *See Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1032 (3d Cir. 1988). Section 1331 grants federal courts the power to hear actions "arising under" the laws of the United States. 28 U.S.C. § 1331. This broad language permits courts to exercise jurisdiction over all claims allegedly based on federal law, despite the possibility that the court may later determine that the asserted right is not cognizable.[4] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). As the Third Circuit stated in an analogous case:

> The question of whether the district court had subject matter jurisdiction pursuant to [§ 1331] is not whether [the plaintiff] had a valid cause of action against the [the defendant] under feder-

al common law. Rather, the subject matter jurisdiction analysis is one of whether the determination of the existence *vel non* of that cause of action is a question "arising under the ... laws ... of the United States."

*Airco*, 850 F.2d at 1032. In other words, the very issue of whether federal law creates a cause of action is itself a "federal question," permitting judicial review under § 1331. *See Bell v. Hood*, 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (stating that the district court has jurisdiction when "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another").

 From this parsing of defendant's objections, it appears clear that the motion to dismiss for lack of subject matter jurisdiction is without merit. The complaint in this case alleges a claim for equitable restitution under federal common law, a cause of action previously recognized by the Third Circuit. *See Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056–58 (3d Cir.1989). Although defendant argues that this claim is no longer valid under federal law, such contentions do not hinder the court's jurisdiction, and, in fact, show the existence of a meaningful federal question. Thus, the court will deny defendant's motion to dismiss for want of subject matter jurisdiction.

4. The Supreme Court has suggested "that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under ... federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946). However, the Third Circuit has previously recognized a claim for common law restitution in circumstances similar to this case, *see, e.g., Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056–58 (3d Cir.1989), and, accordingly, plaintiff's claims cannot be deemed frivolous or immaterial so as to warrant dismissal on jurisdictional grounds.

**B.** **Validity of Claims Under Federal Common Law for Equitable Restitution**

Of course, resolution of the jurisdictional issue does not relieve the court of its obligation to determine the viability of plaintiff's claim for common law restitution. Defendant asserts, in the context of its motion to dismiss for failure to state a claim, that such claims are no longer cognizable in light of the Supreme Court's decision in *Great–West Life and Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).[5] The court disagrees. An examination of the Third Circuit's rationale in recognizing a common law right to restitution under ERISA[6] and the scope of the Supreme Court's decision in *Great–West* shows that the common law claim for restitution remains a viable cause of action.

**1.** **Equitable Restitution Under ERISA**

ERISA, a " 'comprehensive and reticulated statute' which Congress adopted after careful study of private retirement pension plans," governs the actions of employee benefit plans and prescribes remedies for violations of plan provisions. *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 510, 101 S.Ct.

1895, 68 L.Ed.2d 402 (1981) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). To create a uniform framework for regulating benefit plans, the statute includes a preemption clause, stating that it "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144. This broad provision evinces congressional intent to permit federal courts to develop common law—to "fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 312 (3d Cir.1982) (quoting *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973)).

Acting on this congressional imprimatur, the Third Circuit, in *Plucinski v. I.A.M. National Pension Fund*, 875 F.2d 1052 (3d Cir.1989), recognized a federal common law cause of action for employers to seek restitution of mistakenly paid contributions to an employee benefit fund. *Id.* at 1057–58. Although ERISA itself does not provide expressly for such a claim, the statute does allow funds to return any contributions "made by an employer ... by a mistake of fact or law." 29 U.S.C. § 1103(c)(2)(A)(ii).[7] From this permissive

---

**5.** This argument apparently presents an issue of first impression in the Third Circuit.

**6.** Federal circuits have split on the issues of whether courts should permit equitable claims in addition to those specifically enumerated by ERISA and whether such claims arise by implication or through federal common law. *See, e.g., Frank L. Ciminelli Constr. Co., Inc. v. Buffalo Laborers Supplemental Unemployment Benefit Fund*, 976 F.2d 834, 835 (2d Cir.1992) (citing cases). Because the Supreme Court has not directly addressed this issue, the analysis that follows is based primarily on Third Circuit precedent.

**7.** Section 1103(c)(2)(A) provides, in its entirety, as follows:

In the case of a contribution, or a payment of withdrawal liability under part 1 of subtitle E of subchapter III of this chapter—
(i) if such contribution or payment is made by an employer to a plan (other than a multiemployer plan) by a mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution, and
(ii) if such contribution or payment is made by an employer to a multiemployer plan by a mistake of fact or law (other than a mistake relating to whether the plan is described in section 401(a) of Title 26 or the trust which is part of such plan is exempt from taxation under section 501(a) of Title 26), paragraph (1) shall

language, the Court of Appeals inferred authority to develop a right of action for employers to recover these contributions. *Plucinski,* 875 F.2d at 1054–55, 1058.

In recognizing the cause of action, the court stressed that the principles underlying ERISA did not support an "automatic right to restitution whenever error is established." *Id.* at 1057. Rather, equitable considerations limit the extent of the claim. *Id.* at 1057–58; *see also Luby v. Teamsters Health, Welfare, & Pension Trust Funds,* 944 F.2d 1176, 1186–87 (3d Cir.1991). "[G]eneral equitable principles govern and when it would be inequitable to ... order ... restitution[,] ... the court should in its sound discretion deny recovery." *Plucinski,* 875 F.2d at 1057–58. In other words, the analysis of a common law restitution claim is not tied to any specific provision of ERISA but is based on application of equitable principles. *See McCurdy v. Net Constr., Inc.,* 57 Fed.Appx. 120, 122 (3d Cir.2003); *Alliance Elec., Inc. v. Local Union No. 98, Int'l Bhd. of Elec. Workers,* Civ. A. No. 91–6892, 1992 WL 358072, at *10 (E.D.Pa. Oct.20, 1992).

### 2. *The Great–West Analysis of "Equitable Relief"*

In *Great–West,* the Supreme Court addressed the question of whether 29 U.S.C. § 1132(a)(3), permitting benefit plans "to obtain other appropriate equitable relief," authorized an action by an employee benefit fund for restitution of settlement proceeds allegedly owed to it under a contract with the fund's beneficiary. *Great–West,* 534 U.S. at 206–09, 213–14, 122 S.Ct. 708. The case arose when Janet Knudson, who had been injured in a car accident, negotiated a state court settlement that did not fully recompense Great–West for payments that it had previously made to her

under an employee benefit plan. *Id.* at 206–09, 122 S.Ct. 708. Great–West refused to accept the partial reimbursement provided under the settlement terms and instead filed suit in federal court for the full amount. *Id.*

The Court held that "other appropriate equitable relief," as used in § 1132(a)(3), did not include the remedy sought by Great–West. *Id.* at 214, 218, 122 S.Ct. 708. Justice Scalia, writing for the majority, distinguished between "legal restitution," in which a party seeks "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money," and "equitable restitution," in which a party seeks "to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 714–15, 122 S.Ct. 708 (quoting RESTATEMENT OF RESTITUTION § 160 cmt. a (1936)). The language of § 1132(a)(3), the Court held, evinced congressional intent to limit available remedies to "those categories of relief that were *typically* available in equity," encompassing only equitable, not legal, restitution. *Id.* at 210, 214, 122 S.Ct. 708 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). Finding that Great–West did not seek the return of particular funds in Knudson's possession but only the imposition of contractual liability, the Court concluded that the claim sounded in legal restitution and was not cognizable under § 1132(a)(3). *Id.* at 214, 122 S.Ct. 708.

### 3. *Effect of Great–West on Common Law Equitable Restitution*

The differing rationales offered by *Plucinski* and *Great–West* show that the Supreme Court's holding does not affect the validity of a common law claim for restitu-

---

not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator de-

termines that the contribution was made by such a mistake.
29 U.S.C. § 1103(c)(2)(A).

tion in the Third Circuit. In *Great–West,* the Court concerned itself entirely with the interpretation of an express statutory provision of ERISA, specifically § 1132(a)(3). *See Great–West,* 534 U.S. at 206, 122 S.Ct. 708 ("The question presented is whether [§ 1132(a)(3) of ERISA] authorizes this action."). In applying accepted doctrines of interpretation such as the plain meaning rule, the Court's goal was to give effect to the language enacted by Congress. *See id.* at 217–18, 221 n. 5, 122 S.Ct. 708. Specifically rejected by the majority was an interpretation of § 1132(a)(3) based on broad and evolving notions of "equity" as developed by courts in other cases. *Id.* at 218 & n. 4, 122 S.Ct. 708. Rather, the "job" of the Court in *Great–West,* as stated by Justice Scalia, was to follow the express language of Congress. *Id.* at 217–18, 122 S.Ct. 708.

▮ In contrast to the analysis of *Great–West,* construction of the common law remedy of equitable restitution is not confined to the terms of a specific provision. In *Plucinski,* the Third Circuit balanced the competing policy goals of ERISA—the desire to encourage employer participation by permitting the return of mistaken contributions and the need to protect fund integrity by regulating refund claims—and developed a limited cause of action for employers to recover overpayments. *Plucinski,* 875 F.2d at 1054–55, 1058. Like its origins, development of this doctrine cannot be tied to specific language

of the statute but is, instead, guided by principles of equity as defined by the courts. *See id.; see also McCurdy,* 57 Fed.Appx. at 122. Essentially, development of common law equitable restitution lies with the courts, to be guided, but not strictly controlled, by the terms of the statute.[8] *See Plucinski,* 875 F.2d at 1054–55, 1058.

Thus, the analysis of *Great–West* is simply inapplicable to the federal common law claim of equitable restitution.[9] The statutory language of § 1132(a)(3) that drove the Supreme Court's decision has no relationship to common law restitution, which the Third Circuit developed from broad equitable principles underlying ERISA and the permissive language of § 1103(c). That both courts chose the same superficial label, equitable restitution, to summarize their conclusions neither suggests nor mandates that the underlying rationale of one case applies to the other. In short, identity of phrase does not require identity of analysis.

▮ The Supreme Court has not yet directly addressed the issue of common law restitution, and, as such, the Third Circuit's resolution of the scope of the common law right remains binding authority. *See United States v. Mitlo,* 714 F.2d 294, 298 (3d Cir.1983) ("[A] decision by this court, not overruled by the Supreme Court[,] is a decision of the court of last resort of this federal judicial circuit and is therefore 'binding on all inferior courts

---

8. Of course, the *scope* of equitable restitution, like any common law doctrine, may always be limited by the terms of the governing statute, in this case, § 1103. *See infra* note 10.

9. Defendant also argues that common law equitable restitution must be abolished in light of the Supreme Court's admonition in *Great–West* that courts should be " 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text."

*Great–West,* 534 U.S. at 209, 122 S.Ct. 708 (quoting *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). However, this statement represents an often-repeated excerpt of an opinion that predates *Plucinski,* and the Third Circuit was clearly aware of the need for care in crafting the right of equitable restitution. *Plucinski,* 875 F.2d at 1057–58; *see also* Daniel J. Meltzer, *The Supreme Court's Judicial Passivity,* 2002 Sup.Ct. Rev. 343, 350.

and litigants in the Third Judicial Circuit.' ") (quoting *Allegheny Gen. Hosp. v. NLRB,* 608 F.2d 965, 970 (3d Cir.1979)). Thus, the court holds that a cause of action for equitable restitution is cognizable in the Third Circuit, and the court will deny defendant's motion to dismiss on this ground.

## C. *Failure To Exhaust Administrative Remedies*

Finally, defendant claims that, even if plaintiff may pursue a common law right to restitution, Empire's failure to request a refund from United Fund bars it from relief. Section 1103(c), on which common law equitable restitution is based, allows multiemployer plans to return contributions made by employers under "a mistake of fact or law ... *within 6 months after the plan administrator determines that the contribution was made by such a mistake.*" 29 U.S.C. § 1103(c)(2)(A)(ii) (emphasis added). Facially, this provision precludes plans from returning contributions to employers until the plan administrator issues a decision that a mistake has, in fact, occurred. Because *Plucinski* predicated the recognition of a common law right to restitution on the permissive nature of this section, *Plucinski,* 875 F.2d at 1054–55, 1058, the scope of the right is arguably limited by the provision's prohibitive language.[10] *Bennett v. Conrail*

*Matched Sav. Plan Admin. Comm.,* 168 F.3d 671, 679 (3d Cir.1999) (stating that ERISA "should be supplemented by common law only where [it] does not address an issue").

Assuming *arguendo* that such an exhaustion requirement does apply, plaintiff's complaint does not include any allegations regarding a request for refund or lack thereof, and the procedural posture of this case restricts the court from consideration of other evidence that may establish either failure to comply or the existence of equitable considerations excusing compliance. *See Plucinski,* 875 F.2d at 1057–58 (stating that "equitable principles govern" claims for common law restitution); *cf. Ethridge v. Masonry Contractors, Inc.,* 536 F.Supp. 365, 368 (D.C.Ga.1982) (holding that equitable considerations such as plan administrator's bad faith conduct may excuse employer from compliance with presentation requirement). Thus, the court will deny the motion to dismiss on this ground to allow for the development of a fuller factual record.

An appropriate order will issue.

### *ORDER*

AND NOW, this 26th day of September, 2003, upon consideration of defendant's motion to dismiss (Doc. 5), and for the reasons set forth in the accompanying

---

**10.** In its brief in opposition to the motion to dismiss, plaintiff asserts that, "[s]ince the Third Circuit has held that an employer has a federal common law right to recover overpayments, any statutory requirement is irrelevant." (Doc. 7). This is simply incorrect. The development of federal common law under ERISA operates on the premise that Congress has implicitly permitted and invited such explication by leaving gaps in the legislation to be "fill[ed] in interstitially" to "effectuate the statutory pattern enacted in the large by Congress." *Van Orman,* 680 F.2d at 312 (quoting *Little Lake,* 412 U.S. at 593, 93 S.Ct. 2389). If Congress amends the statute to

preclude the right of employers to seek restitution, or if it provides an express remedy for employers, no gap would exist and the amended statute would effectively supersede the common law doctrine of equitable restitution. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 107, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) ("It may happen that new federal laws and new federal regulations may in time preempt the field of federal common law ...."); *see also In re Motions of Dow Jones & Co.,* 142 F.3d 496, 504 (D.C.Cir.1998) (finding common law right of access to grand jury-related information superseded by Federal Rule of Criminal Procedure 6(e)(5)-(6)).

memorandum, it is hereby ORDERED that the motion is DENIED.