**UNITED STATES of America ex rel. Stephen PARANICH, D.C., Plaintiff,**

v.

**Deborah SORGNARD, et al., Defendants**

**No. CIV.A.3:CV–98–2070.**

United States District Court, M.D. Pennsylvania.

Oct. 8, 2003.

Carmen J. Latona, Latona & Ross, Wilkes–Barre, PA, Ian M. Stuart, Philadelphia, PA, William R. Keller, Teller and Keller, Wilkes Barre, PA, for Plaintiff Stephen R. Paranich, D.C.

Stephen Kaus, Marianne Koepf, Cooper, White & Cooper LLP, San Francisco, CA, Andrew J. Giorgione, Obermayer Rebmann Maxwell & Hippel LLP, Harrisburg, PA, for Defendant Irwin Leasing Corporation f/k/a Allied Capital Corporation.

### MEMORANDUM

CONNER, District Judge.

Presently before the court is defendant Irwin Leasing Corporation's ("Irwin") motion for summary judgment. (Doc. 125). This is a *qui tam*[1] action under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("the Act"). *Qui tam* plaintiff,[2] Steven Paranich ("Paranich"), contends that Irwin induced him to file false Medicare reimbursement claims for treatments using a medical device called the Matrix. Irwin denies any liability for plaintiff's Medicare claims, and asserts that, even if it is liable, Paranich is not a proper relator under the Act. Irwin also asserts via counterclaim that Paranich must indemnify Irwin for the expense of defending the instant action.

Irwin moves for summary judgment on Paranich's claims under the False Claims Act and for partial summary judgment on the issue of liability under its indemnity counterclaim. The parties have fully briefed the issues, and the motion is now ripe for disposition. For the following reasons, the court will dismiss this matter for lack of subject matter jurisdiction.

### I. *Factual Background*

The following facts are undisputed.[3] Irwin is a corporation that finances the purchase of equipment through leases. (Doc. 127, ¶ 1). Defendant Matrix Biokinetics, Inc., is a corporation that previously sold medical devices throughout the United States. *Id.* ¶ 2. Beginning on January 1, 1994, Matrix Biokinetics marketed and sold electric nerve stimulation devices known as the Matrix Pro Elec DT and Matrix Pro Elec DT2 ("the Matrix"). *Id.* ¶ 3.

---

1. *"Qui tam"* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur,* which means "who as well for the king as for himself sues in this matter." BLACK'S LAW DICTIONARY 1262 (7th ed.1999).

2. A *qui tam* plaintiff is commonly referred to as the "relator." *Hutchins v. Wilentz, Goldman, & Spitzer,* 253 F.3d 176, 182 (3d Cir. 2001).

3. Rule 56.1 requires the non-moving party's statement of facts to respond to the numbered paragraphs set forth in the moving party's statement. L.R. 56.1 Moreover, a responsive statement "shall include references to the parts of the record that support the statements." *Id.* Plaintiff's statement of facts does not respond to defendant's statement and is replete with unsupported factual assertions. Therefore, the court will adopt defendant's statement of facts, except for those facts clearly disputed by plaintiff with adequate record references. *See id.* ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

Paranich is a chiropractor practicing in Pennsylvania. *Id.* ¶ 5. He is co-owner of Comprehensive Medical Network ("CMN"), a multi-disciplinary clinic with offices in Pennsylvania. *Id.* ¶ 6. In November or December 1996, Paranich and CMN decided to acquire a Matrix device. *Id.* ¶ 7. To aid CMN in the acquisition of the Matrix, an independent sales representative arranged for financing of the equipment in the form of leases with Irwin. *Id.* ¶ 8. In 1996 and 1997, CMN and Irwin entered into four Matrix leases. *Id.* ¶ 9. Under each of the Matrix lease agreements Paranich agreed to indemnify Irwin for any and all claims, including attorneys' fee, arising from or in connection with the leased Matrix devices. *See* Matrix Leases ¶ 9.

The Matrix pulsates electricity to the nerves at various frequencies through electrodes that are placed on the body. (Doc. 127, ¶ 11). This allegedly relieves pain. *Id.* ¶ 10. According to defendant CERA International, Inc. ("CERA"),[4] the Matrix functions as a neuron blockade or a "nerve block" if used at a high electrical frequency. *Id.* ¶ 12. In 1994, the medical community viewed the idea of an electric nerve block as non-intrusive and less painful than a traditional chemical injection nerve block. *Id.* ¶ 15. In June 1994, the U.S. Food and Drug Administration ("FDA") approved the Matrix for sale under Section 510(k) of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360(k). However, the FDA did not approve the Matrix as a nerve block.

Under the Medicare system, doctors submit claims for reimbursement using standard uniform code numbers listed in the American Medical Association's *Current Procedural Terminology* ("CPT") manual. (Doc. 127, ¶¶ 16–18). The CPT manual identifies each reimbursable medical procedure. *Id.* ¶ 18. After acquiring the Matrix, Paranich was unsure of the proper code under which he should bill Medicare for use of CMN's Matrix devices. *Id.* ¶ 19.

In January 1997, Paranich began submitting claims for reimbursement for Matrix procedures under the CPT code for "nerve block injections."[5] *Id.* ¶ 20. CPT lists these codes as "Introduction/Injection of Anesthetic Agent (Nerve Block), Diagnostic or Therapeutic." *Id.* Medicare reimburses nerve blocks at rates of $150 to $350 per procedure; however, it reimburses "electronic stimulation" at rates of only $35 to $80 per procedure. *Id.* ¶ 26. Irwin never advised Paranich or CMN regarding the proper billing of Matrix services; rather, plaintiff allegedly chose these CPT codes based on Matrix Biokinetics and CERA's recommendation. *Id.* ¶¶ 21–22, 28–29. Medicare purportedly reimbursed Paranich at the rates for nerve block injections. *Id.* ¶ 23.

Dr. Deborah McMenamin ("McMenamin"), a former employee of CMN, believed Paranich was overbilling Medicare for his services using the Matrix devices. *Id.* ¶ 24. McMenamin reported Paranich's conduct to Special Agent Charles Hydock of the U.S. Federal Bureau of Investigation ("FBI"). *Id.* Special Agent Hydock subsequently commenced an investigation into Paranich's Medicare billing practices. *Id.* On October 22, 1997, the U.S. Department of Justice served Paranich with a grand jury subpoena, which required CMN to produce all documents relating to the Matrix equipment, specifically including

---

4. CERA is a research and technical organization that conducted sales conferences for the Matrix device. (Doc. 127, ¶ 4).

5. CPT codes 64400–64450. At times Paranich also billed Matrix services under a code for "unlisted procedures." (Doc. 127, ¶ 26).

billing documents. *Id.* ¶ 25. Plaintiff ceased billing his Matrix services as a "nerve block" in February 1998. *Id.* ¶ 27.

After receiving the grand jury subpoena, Paranich's counsel, Kenneth Haber ("Haber"), began an investigation of the Matrix device. Paranich's limited participation in the investigation was at Haber's direction. (Doc. 127, ¶ 31; *see also* Doc. 128, Ex. R).

In October 1997, prior to Haber's investigation, Transamerica Occidental Life Insurance Company ("Transamerica"), the carrier for the Medicare program in Southern California, published a bulletin advising its providers not to bill services using the Matrix device under the CPT codes for nerve block injections. (Doc. 127, ¶ 63). In mid–1998, Transamerica commenced hearings regarding the appropriate billing code for "electrical nerve blocks" and the corresponding rate of reimbursement for such procedures. *Id.* ¶ 33. When attorney Haber learned of the hearings in October 1998, he filed a request with the government for the hearing report under the Freedom of Information Act ("FOIA"). *Id.* ¶ 34.

On May 20, 1998, prior to the commencement of the instant action, a group of doctors in Southern California initiated suit against Matrix Electromedical demanding restitution and alleging fraud with respect to billing codes that Matrix Electromedical allegedly recommended to those doctors. *Id.* ¶ 58; *Heifets v. Matrix Electromedical,* No. BC–191317 (Ca.Super.1998). Irwin was a named defendant in *Heifets.*[6] *Id.* ¶ 59. The *Heifets* court eventually entered summary judgment in Irwin's favor, based on the its conclusion that Irwin was not responsible for Matrix Electromedical's activities.

Paranich filed the original complaint in this action on December 21, 1998 (Doc. 1); he did not offer the government his alleged "insider" information prior to December 21, 1998.

## II. *Discussion*

### A. *False Claims Act*

The False Claims Act, 31 U.S.C. §§ 3729 *et seq.,* assigns civil liability to any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government … a false or fraudulent claim for payment or approval ….

31 U.S.C. § 3729(a)(1). The Act also authorizes private citizen-insiders to bring *qui tam* actions to enforce Section 3729. *See* 31 U.S.C. § 3730(b)(1).

Throughout the history of the False Claims Act, Congress has sought to balance the competing interests of (1) encouraging insiders to report fraud on the government, and (2) preventing individuals who learn of a fraud only after public disclosure of the facts from filing opportunistic *qui tam* actions. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Insurance Co.,* 944 F.2d 1149, 1154 (3d Cir.1991); *United States ex rel. LaCorte v. Smith-Kline Beecham Clinical Laboratories, Inc.,* 149 F.3d 227, 233 (3d Cir.1998). In furtherance of these objectives, Congress promulgated, *inter alia,* the following jurisdictional limitation under the False Claims Act:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administra-

---

**6.** Irwin was also a named defendant in *Rubanenko v. Matrix Biokinetics, Inc.,* No. BC–196145 (Ca.Super.1998). *Rubanenko* was voluntarily dismissed in August 1998. (Doc. 127, ¶¶ 61–62).

tive hearing, in a congressional, administrative, or Government [sic] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

■ Irwin contends that the court lacks subject matter jurisdiction because the alleged fraud was publicly disclosed in two lawsuits and via the government's response to a document request under the Freedom of Information Act ("FOIA"). Motions attacking the subject matter jurisdiction of the district court are typically brought under Federal Rule of Civil Procedure 12(b)(1). *See Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Empire Kosher Poultry, Inc. v. United Food and Commercial Workers Health & Welfare Fund of Northeast Pa.,* 285 F.Supp.2d 573, 2003 WL 22218250, *2 (M.D.Pa.2003). However, "[w]hen a court's subject matter jurisdiction depends upon the same statute that creates the substantive claims, the jurisdictional inquiry is necessarily intertwined with the merits." *U.S. ex rel. Fine v. MK–Ferguson Co.,* 99 F.3d 1538, 1543

(10th Cir.1996) (citing *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995)). In such a situation, it is proper for the court to address the issue in the context of a motion for summary judgment. *Id.; Garcia v. Copenhaver, Bell & Associates,* 104 F.3d 1256, 1261 (11th Cir.1997); *Powell–Ross v. All Star Radio, Inc.,* 1995 WL 491291, *3 (E.D.Pa.1995).

■ This is such a case. "[T]he jurisdictional question of whether a 'public disclosure' has occurred arises out of the same statute that creates the cause of action." *Fine,* 99 F.3d at 1543 (citing *United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1517–18 (10th Cir.1996)). Accordingly, the court will apply the legal standard for summary judgment.[7] Nevertheless, if Irwin prevails on this claim, the court must dismiss the complaint for lack of subject matter jurisdiction.

■ Under Section 3730(e)(4), the court lacks jurisdiction if there is (1) a "public disclosure," (2) which the instant *qui tam* suit is "based on," and (3) the putative relator is not an "original source" of the information. The parties dispute each of these elements. In order to qualify as a "public disclosure," the disclosure

---

**7.** Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Saldana v. Kmart Corp.,* 260 F.3d 228, 231–32 (3d Cir.2001). A fact that will affect the outcome of the case under the governing law is "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party." *Reeder v. Sybron Transition Corp.,* 142 F.R.D. 607, 609 (M.D.Pa.1992) (citing *White v. Westinghouse*

*Electric Company,* 862 F.2d 56, 59 (3d Cir. 1988)); *see also Saldana,* 260 F.3d at 232. At the summary judgment stage, a judge does not weigh the evidence for the truth of the matter, but simply determines "whether there is a genuine issue for trial." *Schnall v. Amboy Nat'l Bank,* 279 F.3d 205, 209 (3d Cir. 2002) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Summary judgment should be granted when a party "fails to make a showing sufficient o establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

"(1) must be 'public' and (2) must occur in one of the specified contexts." *United States ex rel. Mistick PBT v. Housing Authority of the City of Pittsburgh*, 186 F.3d 376, 383 (3d Cir.1999); *see also* 31 U.S.C. § 3730(e)(4)(A). The Third Circuit has determined that a government investigation and report under FOIA qualifies as a public disclosure. *Id.* Likewise, disclosure in any stage of proceedings in a civil lawsuit also constitutes public disclosure. *Stinson*, 944 F.2d at 1157. The undisputed facts establish that attorney Haber learned of Paranich's Matrix billing problems via: (1) a grand jury subpoena; (2) an FOIA report concerning Transamerica's investigation into Matrix reimbursement billing; and (3) two California state lawsuits. (*See* Doc. 127, ¶¶ 33, 34, 58, 59, 63). All of these public events occurred long before the commencement of the instant action. As a result of these public disclosures, information of Irwin's alleged fraud was "equally available to strangers to the fraud transaction had they chosen to look for it" as it was to Paranich. *Stinson*, 944 F.2d at 1155–56. Clearly, Irwin has established public disclosure of the alleged fraud.

A majority of the circuits construe the "based on" element to require that the alleged fraud be "supported by" or "substantially similar to" the public disclosure. *Mistick*, 186 F.3d at 386 (citing *United States ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. University*, 161 F.3d 533, 539–40 (9th Cir.1998); *United States ex rel. Findley v. FPC–Boron Employees' Club*, 105 F.3d 675, 682–84 (D.C.Cir.1997); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992); *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 324 (2d Cir. 1992)).[8] In accordance with the majority view, in the Third Circuit, the "based on" requirement is met if "the disclosure sets out either the allegations advanced in the qui tam action or all of the essential elements of the qui tam action's claims." *Mistick*, 186 F.3d at 388.

■ Under this standard, the court has little difficulty finding that the instant complaint is "based on" the previously discussed public disclosures. (*See, e.g.*, Doc. 129, Exs. 3, 8). For example, Irwin Leasing's allegedly unlawful Medicare billing advice was directly at issue in *Heifets*, No. BC–191317 (Ca.Super.1998). In *Heifets*, the plaintiffs alleged that the defendants, including Irwin Leasing:

> induced Plaintiffs and other class members to acquire the MATRIX Bioelectric Treatment System and Device known as PRO ElecDT or some other name, by misrepresenting to the class members that MEDICARE will pay for treatments given patients with this device…. In truth MEDICARE now claims that the billings for treatments rendered by the device were erroneous and in violation of the MEDICARE Law.

(Doc. 129, Ex. 3 ¶ 6; *see also id.*, Exs. 5, 6). Although it was not an action under the False Claims Act, the complaint in *Heifets* set forth the essential elements of the instant action. *See also Rubanenko* (Doc. 129, Ex. 8). Accordingly, the jurisdictional bar of Section 3730(e)(4) applies, unless Paranich is an "original source" of the information. 31 U.S.C. § 3730(e)(4); *Mistick*, 186 F.3d at 388.

An "original source" is

---

8. A minority of circuit courts view a complaint to be "based on" a public disclosure only if the relator actually derives the allegations from the disclosure. *See, e.g., United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir.1994); *U.S. v. Bank of Farmington*, 166 F.3d 853, 863 (7th Cir.1999). In *Mistick*, the Third Circuit explicitly rejected the minority's "based on" interpretation. 186 F.3d at 386–88.

an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(B).

It is unclear exactly when plaintiff discovered Irwin's allegedly fraudulent conduct. Plaintiff asserts that he and his attorney, Kenneth Haber, discovered Irwin's alleged conduct over a period of approximately fourteen months following his receipt of the grand jury subpoena in October 1997. A putative relator may qualify as an "original source" if "their information results *from their own investigation.*" *Stinson,* 944 F.2d at 1161 (emphasis added). However, the record is devoid of evidence that *Paranich* investigated the alleged fraud. In fact, Haber, burdened by his client's grand jury subpoena, conducted the investigation as a defensive measure, with little more than Paranich's cooperation. For example, in response to defendants' second set of interrogatories, Paranich states:

2. Please state in detail every step of YOUR investigation that led you to conclude that YOUR services using the MATRIX DEVICE were not to be billed to Medicare under CPT–4 codes 64400–64549.

. . . . .

SUPPLEMENTAL ANSWER: Plaintiff's investigation was largely handled through Mr. Haber and Plaintiff followed the advise respecting the same. *The details of any investigation taken by Mr. Haber is unknown.*

3. Please IDENTIFY any and all PERSONS who participated in YOUR investigation that [sic] YOU to conclude that YOUR services using the

MATRIX DEVICE were not to be billed under CPT–4 codes 64400–64549.

. . . . .

SUPPLEMENTAL RESPONSE: Kenneth Haber, Esquire and his employees and staff and representatives of the Federal Bureau of Investigation that were involved in this matter.

. . . . .

5. Please describe in detail what Mr. Paranich personally did to contribute to the investigation that led YOU to conclude that YOUR services using the MATRIX device were not to be billed to Medicare under CPT 4 codes 64400–64549.

. . . . .

SUPPLEMENTAL ANSWER: *Plaintiff cooperated in all interviews with counsel and staff of his counsel, as well as members of the Federal Bureau of Investigation and provided all billing documentation associated with the Matrix device.*

(Doc. 128, Ex. R) (underscore emphases added).

 Haber apparently informed Paranich of the potential *qui tam* claims after learning of the California lawsuits and Transamerica's investigation. Thus, the record reflects that Paranich's knowledge is based upon prior public disclosures; it is clearly derivative, not direct and independent. "[A] relator who would not have learned of the information absent public disclosure [does] not have 'independent' information within the statutory definition of 'original source.'" *Mistick,* 186 F.3d at 389.

[T]he relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to

understand the significance of a publicly disclosed transaction or allegation.

*Stinson,* 944 F.2d at 1160.

The undisputed facts demonstrate that plaintiff is not an "original source" of the allegations in the instant complaint; hence, the court lacks jurisdiction to entertain this action. 31 U.S.C. § 3730(e)(4).[9]

### B. *Contractual Indemnity*

Irwin also moves for partial summary judgment on its state law counterclaim for indemnification. In asserting this counterclaim, Irwin invokes the court's supplemental jurisdiction under 28 U.S.C. § 1367. (*See* Doc. 103 ¶ 3). However, in the absence of any remaining claims over which we enjoy original jurisdiction, the court will decline to hear Irwin's state law counterclaim. 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction"); *cf. Nelson v. Upsala College,* 51 F.3d 383, 390 (3d Cir.1995) (remanding to district court with instructions to dismiss remaining state law claim without prejudice because the district court previously granted summary judgment on the only federal claim). The court will dismiss Irwin's indemnification counterclaim without prejudice to its right to reassert it in a timely fashion before a state court of competent jurisdiction.

An appropriate order will issue.

---

9. Because we lack jurisdiction over this *qui tam* action, the court will also vacate the October 18, 2001, entry of default (Doc. 75)

against defendants Richard Sorgnard, Matrix Biokinectics, Inc., and CERA International, Inc.