**Dorothy L. RUPERT, Executor of the Estate of Rosie E. KNEPP;**

**and**

**Dorothy L. Rupert and Omega Bank, N.A., Co–Trustees under Agreements of Trust of Rosie E. Knepp dated September 2, 1994 and July 13, 1994; Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

Civ.A. No. 1:CV–03–0421.

United States District Court, M.D. Pennsylvania.

Oct. 22, 2004.

Elizabeth J. Goldstein, Elyse E. Rogers, Keefer, Wood, Allen & Rahal, LLP, Camp Hill, PA, for plaintiffs.

Dara B. Oliphant, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, Lorna N. Graham, Scranton, PA, for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

In 1991, at the age of seventy-nine, Rosie E. Knepp won the Pennsylvania Lottery and began receiving payments of about $630,000, to be paid annually over a period of twenty-one years. She died in August of 1997, with the lottery payments dwarfing all other assets in her estate.

The plaintiffs are Dorothy L. Rupert, Knepp's daughter and the executor of her estate, and Omega Bank, co-trustee along with Rupert of certain trusts set up by the decedent. Plaintiffs are suing the United States for a partial refund of estate tax after the government rejected their claim that interest on a loan they had taken out to pay the tax is deductible as an administrative expense under 26 U.S.C. § 2053(a)(2). They also seek to establish the estate's right to deduct future payments of interest as they are paid and made certain.

We are considering Plaintiffs' motion for summary judgment. The main issue is whether the loan was "necessarily incurred" to preserve the estate; if so, the interest is deductible from the gross estate and the amount of estate tax is reduced correspondingly. Plaintiffs say that the loan was necessary because the estate did not have sufficient liquid assets to pay the estate tax and was not required to sell any assets, such as the lottery revenue stream, to pay the estate tax. The government says the motion should be denied because Plaintiffs have the burden of showing the entitlement to the deduction and have failed to do so because material issues of fact remain as to whether the lottery payments could have been sold without damaging the estate or impairing its monetary value.

### II. *Standard of Review.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* at 586–87, 106 S.Ct. 1348 (citations omitted)

### III. *Background.*

The relevant facts are as follows.[1] Rosie Knepp won the Pennsylvania Lottery when she was seventy-nine years old. She

---

1. Defendant has responded to some of Plaintiffs' statements of material facts by stating "Without knowledge of these specific facts." Local Rule 56.1 requires the nonmoving party on a motion for summary judgment to respond to the moving party's statement of material facts and to include "references to the parts of the record" that support the opposition statement. *United States v. Sorgnard,* 286 F.Supp.2d 445, 447 n. 3 (M.D.Pa.2003). Defendant's responses fail to refer to the record. Hence, we will accept as fact the statements to which such a response has been given. *Id.*

was to receive annual gross payments of $631,375.96 over a period of 21 years. Upon her death, her estate and the Internal Revenue Service (IRS) agreed that her gross estate had a value of $6,973,426, with $5,560,991 of that amount representing the present value of the remaining lottery payments due as of her death.

The decedent had established a trust (the "Savings Trust") to save for the anticipated taxes due upon her death. The lottery winnings were paid into a second trust (the "Lottery Trust"). At the time of her death, the Savings Trust balance was $1,230,120.95. The estate paid $3,054,191.46 in federal estate tax. To make up the difference, $1,715,000 was borrowed from Omega Bank, N.A. The loan was for fourteen years with a fixed rate of 8.19 percent for the first five years and then variable thereafter. The loan was refinanced for a lower, fixed interest rate through First National Bank of Mifflintown. The only source of repayment for this loan is the Lottery Trust.

On September 2, 1999, Plaintiffs filed a Protective Refund Claim with the IRS. In this Protective Claim, the Plaintiffs claimed a right to a refund of $586,507.90, the estimated amount of total future interest payments. On March 6, 2000, Plaintiffs filed an accurate Supplemental United States Estate Tax Return with the IRS claiming a refund of interest actually paid in calendar year 2000. The IRS disallowed both the Protective Claim and the 2000 refund claim, and Plaintiffs filed a formal protest. On March 6, 2001, Plaintiffs filed an accurate Supplemental United States Estate Tax Return with the IRS claiming a refund of interest actually paid in calendar years 2000 and 2001. Similarly, the Plaintiffs filed a refund claim on April 30, 2002 for interest paid in calendar years 2000, 2001, and 2002. The IRS has yet to issue a refund to the estate as a

result of these claims. These claims have also not been denied.

## IV. Discussion.

### A. Has the Expense Actually Been Incurred, And Is the Claim as It Relates to Future Interest Payments Barred by the Statute of Limitations.

We first address three arguments Defendant makes against the claim. The government first argues that the estate can only deduct the interest if it actually incurred the expense but that the estate did not do so because the Lottery Trust was the only party to the loan. Second, the government argues that Plaintiffs are improperly trying to deduct future payments that are uncertain. Defendant does not dispute that some interest expense has been incurred but points to the protective claim made for interest payments made irrelevant by subsequent refinancing. Third, the government argues that the statute of limitations for Plaintiffs' refund claim expired on May 5, 2001, and that a claim for any interest payments made after that date would be barred by the statute of limitations.

■ The first argument has no merit. The Lottery Trust was a part of the gross estate of Rosie Knepp. Therefore, the Lottery Trust would be obligated to pay a portion of the federal estate taxes. Further, the Lottery Trust gave the proceeds of the loan to the estate to satisfy the estate tax obligation. Thus, this trust has a sufficient nexus to the estate to say that the estate actually incurred the interest expense. *Contrast Lasarzig v. Commissioner*, 78 T.C.M. (CCH) 448 (1999).

As to the second argument, we agree with Plaintiffs that their protective claim for future interest payments was proper even though the actual amount could not be determined until the payment was made. *See generally Pickett v. United*

*States,* 1990 WL 300669, 1990 U.S. Dist. LEXIS 20898 (N.D.Fla.1990)(citing *United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132, 138 (1941))(recognizing the validity of a taxpayer's informal refund claim). The protective claim also disposes of the government's limitations argument. *Id.*[2]

### B. *Necessity of the Loan.*

Plaintiffs argue that the loan was necessary, hence the interest payments are deductible, because the estate lacked the liquid assets to pay the estate tax, debts, and administrative expenses of the estate. They also maintain that the decision to borrow the money rather than sell the right to future lottery payments was lawful because, as their expert calculated, borrowing the money leaves the estate with a greater monetary value. They also contend that under Pennsylvania law the lottery payments could not be sold, although they could be assigned. Finally, they argue that their fiduciary judgment that a loan was proper should not be second-guessed.

In opposition, Defendant contends that the lottery payments could indeed have been sold and the proceeds used to pay the estate tax. In support, it points to Dorothy Rupert's deposition testimony that she received solicitations all the time to purchase the lottery payments, including around the time that the loan was taken out, but selling the lottery to one of these companies was never discussed. (Doc. 25, Rupert dep. 10–16). The government further argues that Plaintiffs have provided no evidentiary support for the conclusion that the loan was necessary to avoid a financial loss to the estate, as required by the case law. *See Estate of Graegin v. Commissioner,* 56 T.C.M. (CCH) 387 (1988); *see also Estate of Todd v. Commissioner,* 57 T.C. 288, 1971 WL 2614 (1971). Hence, the loan was not necessary. In this regard, the government argues that the conclusion of Plaintiffs' expert is irrelevant because it is based on the tax advantage of deducting the interest payments on the loan, which does not address the legal question that precedes it, whether the loan was necessary.

We begin by deciding that Pennsylvania law permits the sale of lottery winnings. Under 72 P.S. § 3761–306(a)(3), future prize payments may be assigned so long as the assignment is made pursuant to an appropriate judicial order.[3] This order must be entered by the Court of Common Pleas where the assignor resides or where the division's headquarters are located. *Id.*[4]

---

**2.** We also note that the protective refund claim of September 2, 1999, also clearly states that Plaintiffs "will be submitting additional refund claims as interest is actually paid." Doc. 1, Compl. Ex. C.

**3.** In *Lotto Jackpot Prize of December 3, 1982 Won by Marianov,* 533 Pa. 402, 406–07, 625 A.2d 637 (1993), the Pennsylvania Supreme Court held that voluntary assignments of lottery winnings and an order approving such a sale were not an "appropriate judicial order" under 72 P.S. § 3761–8. Therefore, the sale of lottery winnings by Marianov, which had been approved by the Court of Common Pleas, was not allowed. Section 3761–306(a)(3) appears to be an attempt by the legislature to allow what *Marianov* would not.

**4.** The statute further provides that the court shall issue the order approving the assignment if:

(i) the assignment is in writing, executed by the assignor and subject to the laws of this Commonwealth;

(ii) the assignor provides a sworn affidavit to the court attesting that the assignor is of sound mind, is not acting under duress, has been advised regarding the assignment by his or her own independent legal counsel and understands and agrees that, with regard to the assigned payments, the Commonwealth and the secretary shall have no further liability or responsibility to make said payments to the assignor; and

Additionally, 72 P.S. § 3761–306(a)(1) allows assignment of lottery payments to the estate of a deceased winner, which is what happened in the instant case. The prize money was put into a trust, and upon the death of Rosie Knepp that trust benefitted her daughter and grandsons. Further, 72 P.S. § 3761–306(c) provides that the "[s]elling or offering for sale assigned or pledged lottery prizewinning shall not be deemed selling or offering for sale an interest under section 307." This indicates that winnings that have been assigned, such as the lottery winnings in this case, can be sold. Thus, taking into consideration the addition of voluntary-assignment procedures to § 3761–306 and the language of § 3761–306(c), we conclude that the lottery payments could have been sold to satisfy the liabilities of the estate.[5]

The ability to sell the lottery payments does not mean that the loan was unnecessary, but as Defendant points out, Plaintiffs have the burden of showing that the interest expense was necessary, *Estate of Todd*, 57 T.C. at 296, which requires them to show that the loan avoided some harm to the estate, and they have provided no evidence in that regard. Plaintiffs are free to provide that evidence in whatever way they wish but, tentatively, we believe that such evidence could be supplied by showing that the sale of the lottery payments would be the equivalent of a forced sale of stock. We know that Plaintiffs already consider the two to be equivalent, but they have provided no factual details to support that conclusion.

We will issue an appropriate order.[6]

## ORDER

AND NOW, this 22nd day of October, 2004, it is ordered that Plaintiffs' motion (doc. 20) for summary judgment is denied.

---

(iii) the proposed assignment does not include or cover payments or portions of payments alleged to be subject to offset under judicial order, unless appropriate provision is made in the order to satisfy the obligations giving rise to the claim for offset, or to offset under any other statute.

5. Since Pennsylvania law would have allowed the sale of the lottery winnings, we need not address the question of whether or not the lottery winnings are considered an annuity.

6. Plaintiffs have also argued that it would be an absurd result if we did not rule in their favor because they could have intentionally delayed paying the estate tax until the lottery payments were received and still had the legal right to deduct the interest payments on the delayed payment. Instead, they borrowed the money so that they could pay the estate tax on time. We reject this argument because it ignores the penalties the estate would have to pay (in addition to the interest), which would not be deductible, if they delayed in paying the estate tax.